### In re ABRAHAM STEERS LUMBER CO.

(District Court, S. D. New York. August, 1901.)

1. BANKRUPTCY—PREFERENCES—DEBTS SUBSEQUENTLY CONTRACTED.

The payment by an insolvent of an existing debt, either in full or in part, does not constitute a preference as regards a new indebtedness contracted subsequently, to which the payment could have had no rela-

tion, and the creditor is not required by Bankr. Act 1898, § 57g, to surrender such payment before he can prove the subsequent debt against the estate of the debtor in bankruptcy; but where a note is given for all or a part of the prior debt, which is still held by the creditor when the subsequent debt is contracted, its payment thereafter is a partial payment on the entire indebtedness then existing, of which it is a part, and constitutes a preference which must be surrendered before the remainder of such indebtedness can be proved.

**2. SAME—PROOF OF CLAIMS—SURRENDER OF PREFERENCES.**

Bankr. Act 1898, § 57g, requiring a creditor who has received preferences to surrender the same before his claim will be allowed, is not confined in its application to preferences received within four months prior to the bankruptcy, but requires the surrender of all preferences as defined in section 60a, which contains no time limit; the only limitation being the debtor's condition of insolvency when the transfer of property by payment or otherwise was made.

**3. SAME—NEW CREDITS.**

The provision of Bankr. Act 1898, § 60c, allowing new credits to be set off against preferences, is applicable only in cases arising under subdivision "b" of the same section, where it is sought to recover such preferences, and does not affect section 57g, requiring the surrender of preferences to entitle the creditor to prove his claim.

**4. SAME—PREFERENCE—CREDIT FOR LABOR OF DEBTOR.**

The performance of labor by an insolvent debtor for his creditor, for which he is given credit on his indebtedness, is not a transfer of property which constitutes a preference under Bankr. Act 1898, § 60a.

In Bankruptcy. On review of referee's decision respecting a claim.

The following is the opinion of Olney, Referee:

This is an application for the re-examination of a proof of claim filed by the respondent, Robert R. Sizer, doing business under the name of Robert Sizer & Co., against the estate of the above-named bankrupt, amounting to $191.25; being the balance due on open account for merchandise sold by the respondent to the bankrupt in March and August, 1900, upon which certain payments have been made. It is sought to vacate proof of claim unless such payment and others made in settlement of a previous independent account, where the debtor was insolvent, be surrendered by the claimant. An involuntary petition in bankruptcy was filed October 22, 1900, and some of the alleged preferential payments were made more than four months prior thereto. The facts are all admitted. The account referred to may be stated as follows:

Abraham Steers Lumber Company in Account with Sizer & Company.

| 1899. | | | |
|---|---|---|---|
| Dec. 23. | To mdse. | | $232 46 |
| 1900. | | | |
| Jan. 24. | By cash | $ 29 68 | |
| | By bills rec. | 200 00 | |
| Jan. 31. | By cash | 2 78 | |
| | | $232 46 | $232 46 |
| Mch. 10. | To mdse. | | $231 66 |
| | To mdse. | | 126 14 |
| June 26. | By cash | $100 00 | |
| Aug. 16. | To mdse. | | 20 62 |
| Aug. 25. | By cash | 50 00 | |
| Aug. 28. | By charges (hauling, piling, and tallying lumber) | 37 17 | |
| | Balance (proved) | 191 25 | |
| | | $378 42 | $378 42 |

It is alleged in the third paragraph of the petition that the payments therein set forth, amounting in the aggregate to $419.23, were made by the debtor while insolvent, and by the fourth paragraph that the effect thereof was to enable the said creditor to obtain a greater percentage of his debt than other creditors of the same class. These statements, which conform precisely with the statutory definition of a preference, are admitted by the first paragraph of the answer; but it is claimed as to the payments made prior to June 22, 1900, that they were not made within four months prior to bankruptcy, and therefore not within the provisions of subdivision "g" of section 57. The first question, therefore, to be considered, is whether the four-months limitation specified in subdivision "b" of section 60 and subdivision "b" of section 3 apply to the preferences referred to in subdivision "g" of section 57, so as to limit the return of preferential payments to those received during four months prior to bankruptcy proceedings. The question seems to be a new one. The four-months period is often specified by the court and applied without objection to cases of this character, but, so far as I have knowledge, the point has never before been raised or specifically passed upon. The bald theory is whether subdivision "a" of section 60 contains the entire and complete definition of the word "preference," when used generally in the bankruptcy act, as it is in subdivision "g" of section 57. This subdivision "a" says, in substance: "A person shall be deemed to have given a preference, if, being insolvent, he has suffered a judgment against himself * * * or made a transfer of any of his property, and the effect of the enforcement of such judgment," etc. "A person shall be deemed to have given a preference if, being insolvent, he has procured or suffered a judgment to be entered against himself in favor of any person, or made a transfer of any of his property, and the effect of such judgment or transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class." As this is the only definition of the word, these two elements, insolvency and payment, made up of a condition and an act, are all that is necessary to constitute a preference under the act. To hold that there is a limitation of four months in all cases is to hold that preferences cannot be predicated upon any facts arising prior to that period,—in other words, that a payment by an insolvent prior to that period cannot be considered a preference. It is difficult to assume such a construction in the face of the opening clause of the next subdivision: "If a bankrupt shall have given a preference within four months before the filing of a petition," etc. This clearly indicates that a preference may be created for general purposes prior thereto, but for the particular purpose of recovery by the trustee it is limited as therein stated. So in section 3 it is provided by subdivision "a" that a preference with intent, etc., is an act of bankruptcy, and subdivision "b" provides that a petition may be filed if such act of bankruptcy was committed within four months. This language would be surplusage and meaningless if preferences generally were limited to four months. Again, it may be well urged that, if it was necessary to confine by specific language the period of preferential acts for the purposes of sections 3 and 60b, then it was also necessary in the case of section 57g, if it was intended to limit that case to the same period. In the case of Carson, Pirie, Scott & Co. v. Chicago Title & Trust Co., 5 Am. Bankr. R. 814, 21 Sup. Ct. 906, 45 L. Ed. 1171, the United States supreme court held that the element of intent, as contained in section 60b, did not enter into the definition of a preference, as used in the clause under consideration, because such element did not form a part of the requirements of a preference as specified in section 60a. It is difficult to distinguish in principle between that case and the present one. It is significant that in sections 3b and 60b the four-months limitation is connected with the element of intent, and that and the period of time are both specific limitations upon the general effect of a preference defined in section 60a. One is a limit of time, and the other of character. The same rule should apply to each of them. If we must borrow from subdivision "b" to complete the definition in subdivision "a" in the point of time, we could equally borrow therefrom in the other case. As it has been determined by supreme authority that it cannot be done in one case, it is safe to say that it cannot in the other. Standing alone, subdivision "a" does not confine the meaning of the word "preference" to

any period except that of insolvency. That is a limit of time, not by days or months, but by an event. That section 60a contains a general definition of a preference, while subdivision "b" sets forth a special kind of a preference and the results flowing therefrom, is evident not only from the reading of the statute, but from the opinion in the Carson Case. Thus the court says: "Subdivisions 'a' and 'b' are concerned with a preference given by a debtor to his creditor. Subdivision 'a' defines what constitutes it, and subdivision 'b' states a consequence of it, gives a remedy against it. * * * Provided, however, that the preference was given four months before the filing of the petition in bankruptcy or before the adjudication, and the creditor has reason to believe that a preference was intended." See opinion of court in Carson, Pirie, Scott & Co. v. Chicago Title & Trust Co. The question at bar did not arise in the Carson Case, but counsel referred to the four-months limit for the purpose of showing that, if that was allowed, the court "could travel outside" for the purpose of taking in the connecting element of intent also. This argument was met by the court as follows: "The argument is strong which is urged to support a four-months limitation, but it can be argued in opposition that subdivision 'a' needs no explanation from other parts of the statute in order to obtain a time limit on the question of preference. It can be argued that subdivision 'a' gives such limit in the existence of insolvency. But we are not required to decide either way on this record. If the element of 'intent' is not to be interpolated into subdivision 'a' of section 60, it must seem that the element of time is not to be so interpolated." I am of the opinion that the payments received from the bankrupt while insolvent, though more than four months prior to the commencement of bankruptcy proceedings, were preferences, within the meaning of section 57g.

The next claim on the part of the respondent to be considered is that a complete settlement and discharge of the original liability for merchandise purchased by the debtor having been effected by the receipt of cash and note, both treated as payment, the transaction is canceled and ended, and the payments made therein, being bona fide, can no more be questioned than they could have been if no subsequent transactions had been entered into between the parties,—in other words, that the right to prove a claim for the balance due upon a subsequent and distinct sale can in no wise be affected by the settlement of the prior indebtedness, as it constituted no part of the particular debt existing at the time of bankruptcy. There is much force to this plea, which is entirely distinct from the question of the applicability of the provisions of section 60c relating to the effect of subsequent credit upon "recoverable" preferences. It is urged by the learned counsel for the creditors that the word "debt," as used in subdivision "a" of section 60, refers solely to the particular indebtedness existing at the time of the bankruptcy, and excludes previous matters not then in esse. Applying the argument to the case at bar, it is claimed that, the payment of the first debt having been made before the second was contracted, there was an interim when the claimant was not a creditor, and that as to the new debt subsequently created the former payment could not be considered a preference, enabling this—in a sense—new creditor to obtain a greater percentage of his debt then existing than any other creditor of the same class. So far as the question relates to separate and contemporaneous debts, it has already been passed upon in several well-considered cases. In re Flick, 5 Am. Bankr. R. 465, 105 Fed. 503; In re Conhaim, 3 Am. Bankr. R. 249, 97 Fed. 923. The question presents some difficulties. In the absence of any controlling authority, my opinion is that where a transaction has been closed in good faith, and the bankrupt's debt fully paid up, and the dealings between the creditor and the bankrupt thus closed, in case thereafter their dealings are resumed, and a debt results which is in existence at the time of the bankruptcy, the act does not contemplate the opening of the transaction that was entirely closed. In other words, I do not think the payment made in that transaction should be considered a preference. It seems to me very unlikely that congress intended to throw open transactions of that kind. The inconvenience and uncertainty that would result from such a construction of the act appear to me so great as to render it improbable that such was the intention of congress.

If I am wrong in the foregoing conclusion as to independent transactions which have been closed, then it is also urged by counsel for creditor that section 60c applies to the preferences mentioned in section 57g as well as to those recoverable under section 60b. If this be true, then the cash payment made upon the first sale would be offset by the subsequent credits. I am prepared, however, to admit the application of section 60c to the case at bar. Judge Shiras, in confirming a very able opinion by Referee James in the case of In re Christensen, 4 Am. Bankr. R. 202, 101 Fed. 802, held that the word "recoverable," in section 60c, confined the operation of that subdivision to section 60b, which latter contains the only provisions for recover-ing preferences. This ruling was followed, but without comment, by the district court in the case of In re Arndt, 4 Am. Bankr. R. 773, 104 Fed. 234. Later decisions in both the circuit and district courts have applied it also to section 60a. See McKey v. Lee, 5 Am. Bankr. R. 267, 105 Fed. 923; In re Ryan, 5 Am. Bankr. R. 896, 105 Fed. 760; and In re Sechler, 5 Am. Bankr. R. 579, 106 Fed. 484. These later decisions might be considered controlling on the referee, were it not for a paragraph in the still later Carson Case. There is nothing in the record of the Carson Case, so far as it has come to my attention, which shows the pertinency of this particular question; but it certainly was discussed by counsel, and disposed of by the court in the following language: "Nor, again, do we find anything which militates against our conclusion in section 60c. That subdivision is applicable to the cases arising under 'b,' and allows a set-off which otherwise might not be allowed." In view of the facts of the case as disclosed by its record, this remark of the court seems to be obiter; hence, upon authority, I conclude that the set-off allowed in section 60c is available to the respondent here.

The counsel for the trustee makes the point that the item of credit to the bankrupt of $37.17 arising by reason of work and labor preferred by the bankrupt for the creditor constitutes a preference. I do not think the performance of labor by the debtor for the creditor constitutes a "transfer of property," in the ordinary meaning of these words, or in the sense in which the words are used in the bankruptcy act, and hence the performance of this work did not constitute a preference. An order may be entered in accordance with the foregoing opinion.

Kneeland, La Fetra & Glaze (Stillman F. Kneeland, of counsel), for trustee.

McKelvey & Mattocks, for respondent.

THOMAS, District Judge. This is a review of the decision of the referee respecting the claim of Robert R. Sizer. Petition in bankruptcy was filed October 22, 1900.

On December 23, 1899, Sizer sold to the bankrupt merchandise of the value of $232.46, for which he received:

| | | |
|---|---|---:|
| January 24, 1900. | Cash | $ 29 68 |
| January 24, 1900. | Note payable and paid April 23d | 200 00 |
| January 31, 1900. | Cash | 2 78 |

| | |
|---|---:|
| Total | $232 46 |

At subsequent dates Sizer sold the bankrupt merchandise as follows:

| | | | |
|---|---|---:|---:|
| March 10. | Merchandise | $357 80 | |
| August 16. | Merchandise | 20 62 | |
| | | | $378 42 |

Upon which Sizer received the following payments:

| | | | |
|---|---|---:|---:|
| June 26. | Cash | $100 00 | |
| August 23. | Cash | 50 00 | |
| August 28. | Labor of bankrupt | 37 17 | |
| | | | $187 17 |

| | |
|---|---:|
| Leaving a balance of | $191 25 |

The sum of $232.46 need not be returned as a condition of proving debts arising on and after March 10, 1900, provided the note may be regarded as a payment at the date of its delivery; for in such case the payments ending January 31st could have no relation to the subsequent account, for before the indebtedness of March 10th accrued the relation of creditor and debtor would have ceased. It is considered that a full or partial discharge of the debt does not impair the right to prove a debt contracted subsequently. Thus, if A. owe B. $500 in January, and pay $500 or $250 thereon in February, this is not a preference as regards a debt contracted in March for $500. There is no reason for denying the right to prove the subsequent debt, inasmuch as the prior payment could not have any reference to or influence upon a debt contracted thereafter; nor could such payment be appropriated to the payment of a then nonexisting debt, either by the creditor or debtor, or both, unless there was some special collusion or arrangement for that purpose. But in the usual course of business a payment of money is appropriable only to an existing debt, and, in the nature of the case, can be related as a preference to such debt alone. In February a debtor cannot prefer a creditor on an indebtedness that is not contemplated and that will be nonexistent until March, and when the March debt arises the credit cannot be transposed from its whole or partial discharge of the first item of the indebtedness so as to discharge partially the second item of indebtedness. These views are expressed for the purpose of approving the referee's holding that the full discharge of the items amounting to $232.46 before March 10th would not have been a preference. But it is considered that the referee erred in applying the note as a payment at the time that it was delivered; for it was not a payment, even if it may be deemed to have extended the time of payment of the account. Had Sizer transferred the note without indorsement, or done some other act from which it might be inferred that the note was accepted or regarded as payment, a different rule might apply. After the giving of the note, and before its maturity and payment, to wit, on March 10, 1900, the bankrupt bought goods amounting to $357.80, so that at such date the bankrupt owed Sizer the note representing an account for goods sold, and the additional sum of $357.80. While the payment was distinctly on the note, and for the purpose of extinguishing it, yet it was a partial payment of a portion of the whole amount of the indebtedness owing from the bankrupt to the creditor. Although the payment of the note was more than four months previous to the filing of the petition in bankruptcy, nevertheless it created a preference under sections 60a and 57g. It is also concluded that section 60c does not avail the claimant, as it has apparent reference to section 60b, and not to section 60a.

The court is constrained to the conclusion that there is no time limit to the operation of section 60a. The suggestion of the supreme court in Carson, Pirie, Scott & Co. v. Chicago Title & Trust Co., 5 Am. Bankr. R. 814, 21 Sup. Ct. 906, 45 L. Ed. 1171, tends in such direction; and the discussion of Judge Lowell in Re Jones, 4 Am. Bankr. R. 563, 110 Fed. 736, states the view that may be adopted

most reasonably. Some limitation of time upon the operation of section 60a may be advisable, but an examination of the act and of the different parts thereof fails to disclose that it exists. The labor, credited August 28th, and amounting to $37.17, may be offset, as it cannot be regarded as a transfer of property.

It results that the payments of $29.68 and $2.78, respectively, on January 24th and January 31st, were not preferences as to subsequent items of indebtedness, but the payments of the note on April 23d, and of $100 and $50, respectively, on June 26th and August 23d, were preferences as to all indebtedness preceding such several payments. Therefore it would seem that the only payments not creating a preference were $29.68 and $2.78 and item for labor. The decision of the referee will be modified in accordance with the views here expressed.