## In re DIX.

### Ex parte GLENS FALLS TRUST CO.

(District Court, N. D. New York.  May 5, 1920.)

1. **Bankruptcy ☞303(3)—Undisputed insolvency held prima facie proof of insolvency a month before.**

    Where the undisputed facts established that the bankrupt was insolvent to a large extent at the time of bankruptcy, even disregarding his contingent obligations, there is prima facie proof that he was insolvent at the time of making transfers a month before, where there was no going business which substantially affected the situation in so short a time.

2. **Bankruptcy ☞303(3)—Evidence held to show preferential payments.**

    Evidence in bankruptcy proceedings that the bankrupt, in a transaction with a bank shortly before his bankruptcy, had transferred to the bank, as security for his notes held by the bank, corporate stock largely exceeding in value the amount of cash received by him and the value of other stock released, *held* sufficient to show that the transfers were preferential.

3. **Bankruptcy ☞303(3)—Evidence held to sustain finding that preferences' were not security for claims in controversy.**

    In bankruptcy proceedings, evidence, consisting of letters and circumstances surrounding the parties, *held* to sustain the referee's findings that the stock transferred by the bankrupt to the claimant was to secure notes held by the claimant, which had since been subsequently paid, but not to secure the claims in controversy.

---

**4. Bankruptcy ⊚⟿311(7)—Preference on claims subsequently paid bars proof of prior existing claim.**

A creditor, who has received a preferential payment on a claim on a debt subsequently paid in full, cannot, under Bankruptcy Act, § 60b (Comp. St. § 9644), prove, without surrendering his preference, another claim against the bankrupt which arose between the time of the preferential transfer and the full discharge of the preferred debt, though without surrender of his preference he could have proved a claim which arose after the full payment of the preferred claim.

**5. Bankruptcy ⊚⟿311(7)—Creditors, having two debts, must surrender ⸰⸰ erence as to one before proving the other.**

Generally a creditor holding two debts at the same time, on one of which he has received a preference, may not prove on the other in bankruptcy proceedings without surrendering his preference on the first.

In Bankruptcy. In the matter of John A. Dix, bankrupt. Order of the referee, allowing the claim of the Glens Falls Trust Company, reversed, and claim expunged.

Edward M. Angell, of Glens Falls, N. Y., for claimant Glens Falls Trust Co.

B. Jermain Savage, of Albany, N. Y., for trustee.

LEARNED HAND, District Judge. In this case the referee has found that the transaction of June 1 and 2, 1915, was intended to give new security for Dix's obligations, within the meaning of the Bankruptcy Act (Comp. St. § 9585 et seq.). He has found, also, that the Iroquois shares were Dix's, of which there is no doubt. He has not expressly found that the bank knew that the shares were Dix's, but he seems to imply as much. His allowance of the claim rests upon two findings: First, that there was no proof of insolvency; second, that there was no proof that the shares were intended to secure any notes but those given on June 1 and 2, 1915.

[1] The proof of insolvency was sufficient. The schedules were admitted without objection, and the debts speak as of the date of petition filed, which was in July, 1915. They show $412,148.81 of Dix's own debts, secured and unsecured, and $500,238.64 of debts on which he was an indorser. Of these over $200,000 were debts of the Moose River Lumber Company, which the records of this court, of which I may always take notice, show to have gone into bankruptcy at the same time as Dix. Just what was the eventual liability of Dix on these notes, some of which were secured, does not appear. His assets amounted to little besides stocks and bonds, Schedule B–3, and of these $255,500 consisted of shares, preferred and common, of the Moose River Lumber Company, which, because of its bankruptcy, were presumptively valueless. The footing of Schedule B–3 is $887,-100, but the items given in fact only foot to $391,100. Taking out the Moose River Lumber Company stock, these assets were $135,600. Dix was therefore insolvent by over $270,000 in July, 1915, without counting his liability upon over $200,000 of Moose River Lumber Company indorsements. In view of the fact that no dispute as to his insolvency appears in the testimony or in the briefs, this is sufficient

prima facie proof of insolvency on June 1 and 2, 1915; there being no going business, as far as appears, substantially to affect the situation in so short a time.

[2] In clearing the transaction of June 1 and 2, 1915, Dix was credited with $4,000 upon the note of $6,250, and its interest, together with the principal and interest of the note of $2,791.25 were paid. Dix received $911.75 in cash and paid petty expenses of $17.05, and the bank released 15 shares of Greenwich stock, a present consideration. As no one can contend that the payment of say $930 in cash and the release of these shares was equal to the value of the Iroquois shares and of $3,500, the bank necessarily received preferential payments and security upon the $6,250 note and the $2,791.25 note. These preferences, as I shall show, were enough to defeat the proofs of claim on the $5,000 Moose River Lumber Company note and the $500 Dix Foundry note.

[3] For this reason it really makes no difference whether or not the Iroquois shares were pledged to the claims now in suit, though on that question I agree with the referee. This appears from Colvin's letter to Becker in June, 1915, and from the bank's subsequent conduct. The letter showed that Colvin took the security only on Dix's personal obligation, not on the Moose River Lumber Company. He expressly says so, relying for the $5,000 note, and perhaps others, upon what Becker had told him of the condition of the Moose River Lumber Company's prospects. That letter shows the intent of the transaction, and in the face of Dix's vague "impressions" is controlling evidence.

Finally, the bank's releases, in June, 1916, of the Iroquois shares, and of the Iroquois bond in January, 1916, are nearly proof positive that they had understood from the outset that they held these securities against only the $1,250 note of Dix and the $5,400 note of Coffin (substituted in November, 1915, for the two originals of June 1 and 2, 1915). It is scarcely credible that they should have released security taken as a preference, because they feared that they might not be able to maintain the preference later. The referee was therefore quite right in holding that inter partes the $5,000 and the $500 notes now in question were not secured. Even though the trustee be right, that in general a bank has a lien upon all security for all debts, the same result follows, because, in the case at bar, the agreement limited the lien, and the agreement would prevail. I do not, therefore, disturb the referee's finding in this respect.

[4] Yet, as I have said, all this makes no difference in the result, because the bank got a voidable preference under section 60b (Comp. St. § 9644), upon the notes for $6,250 and for $2,791.25, which were eventually paid in full. The rule, as established by two decisions of the Circuit Court of Appeals for the Second Circuit (In re Abraham Steers Lumber Co. [D. C.] 110 Fed. 738, affirmed 112 Fed. 406, 50 C. C. A. 310, and In re Lyon, 121 Fed. 723, 58 C. C. A. 143), is this: If a bankrupt gives a voidable preference of the single debt which he owes to a creditor, and actually extinguishes it, he need not surrender the preference as a condition of proving a debt subsequently arising;

but if the preference leave the old debt in part surviving, so that upon incurring the new debt he is still indebted upon the old, he must surrender his preference upon the old in order to prove upon the new. In short, it is only when the debt on which he seeks to prove came into existence after the extinction of the debt on which the bankrupt has made a preferential payment that he may prove without surrendering his preference on the other debt.

[5] In the case at bar the debts now sought to be proved were all in existence when the preferences were made. It is in general the rule that a creditor holding two debts at the same time, on one of which he has received a preference, may not prove upon the other without surrendering the preference on the one. Swarts v. Siegel, 117 Fed. 13, 19, 54 C. C. A. 399 (C. C. A. 8th); Livingston v. Heineman, 120 Fed. 786, 57 C. C. A. 154 (C. C. A. 6th); In re Leslow, 104 Fed. 229 (D. C. Minn.); In re Meyer, 115 Fed. 997 (D. C. Tex.).

As, therefore, there were clearly preferential transfers in payment of the notes for $6,250, and $2,791.25, the bank may not prove on any other debts until these preferences are paid. In view of the small dividend to be paid, I assume that it is unnecessary to give the bank the option of surrender, and the order will simply be reversed, and the claims expunged.