### GANS v. ELLISON et al.

#### (Circuit Court of Appeals, Third Circuit. April 22, 1902.)

#### No. 9.

BANKRUPTCY— CREDITORS—PREFERENCE — RETURN — SUBSEQUENT CREDITS— RIGHT TO PROVE CLAIM.

Under Bankr. Act, §§ 57g, 60a–60c, defining a "preference," and the rights of creditors who have been preferred, where within four months of the institution of the bankruptcy proceedings a creditor of the bankrupt has innocently received payments, and thereafter given the bankrupt further credit, without security, for property which becomes a part of his estate, such creditor will be required to return only the excess, if any, of such payments over such subsequent credits, as a condition precedent to the right to prove his claim.

Appeal from the District Court of the United States for the Eastern District of Pennsylvania.

Julius C. Levi, for appellant.

H. C. Thompson, Jr., for appellees.

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

ACHESON, Circuit Judge. This is an appeal by Aaron Gans, trustee of the estate of E. O. Thompson's Sons, bankrupts, from an order of the district court approving the allowance by the referee in bankruptcy of the claim of John B. Ellison & Sons, creditors, and the claim of Harrington & Goodman, creditors, against the estate of the bankrupts. The same question of law is common to these two cases brought up by appeal. The facts in the respective cases are these: E. O. Thompson's Sons were indebted to John B. Ellison & Sons in the sum of $6,671.89 for merchandise sold and delivered by the latter to the former. Within four months before the petition in bankruptcy was filed, these creditors, without knowledge that their

debtors were insolvent, innocently received on account of this indebtedness two payments of $900 each, and afterwards, in good faith, sold and delivered to the debtors upon credit, without security of any kind, additional merchandise to the value of $1,703.15, which became a part of the estate of the debtors. These creditors, tendering to the trustee in bankruptcy $96.82, the excess between the payments and new credits, claimed the right to prove against the estate for a dividend upon $6,671.89, the amount of the indebtedness as it originally stood. The referee allowed the claim, and the court approved the allowance. E. O. Thompson's Sons were indebted to Harrington & Goodman in the sum of $3,113.46 for merchandise sold and delivered by the latter to the former. Within four months before the petition in bankruptcy was filed, these creditors, without knowledge that their debtors were insolvent, innocently received on account of this indebtedness payments amounting in all to $540.65, and afterwards, in good faith, sold and delivered to the debtors upon credit, without security of any kind, additional merchandise to the value of $586.56, which became a part of the debtors' estate. Taking into account the excess of new credits over the payments, the amount due these creditors was $3,159.37, which they claimed the right to prove against the estate. The referee allowed the claim, and the court approved the allowance. All the above-mentioned transactions occurred in the regular course of business dealings between the parties. In the case of John B. Ellison & Sons, the appellant, the trustee in bankruptcy, contends that the entire sum of $1,800 so paid to these claimants must be refunded by them to the bankrupts' estate before they can prove against the estate; the claimants being entitled upon such refunding to a dividend upon the amount of the whole indebtedness to them. And the appellant takes a like position as to the claim of Harrington & Goodman.

The solution of the question now before us involves a particular consideration of the following cited paragraphs of the bankrupt act:

Paragraph "g" of section 57:

"The claims of creditors who have received preferences shall not be allowed unless such creditors shall surrender their preferences."

Paragraph "a" of section 60:

"A person shall be deemed to have given a preference, if, being insolvent, he has procured or suffered a judgment to be entered against himself in favor of any person, or made a transfer of any of his property, and the effect of the enforcement of such judgment or transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class."

Paragraph "b" of section 60:

"If a bankrupt shall have given a preference within four months before the filing of a petition, or after the filing of the petition and before the adjudication, and the person receiving it, or to be benefited thereby, or his agent acting therein, shall have had reasonable cause to believe that it was intended thereby to give a preference, it shall be voidable by the trustee and he may recover the property or its value from such person."

Paragraph "c" of section 60:

"If a creditor has been preferred, and afterwards in good faith gives the debtor further credit without security of any kind for property which be-

comes a part of the debtors' estates, the amount of such new credit remaining unpaid at the time of the adjudication in bankruptcy may be set off against the amount which would otherwise be recoverable from him."

These paragraphs are closely related. They are parts of a system which aims at equality between creditors of the same class. They should then be read together, and in such manner as to harmonize the several clauses with each other, and to promote the general scheme of the act. It is hard to believe that it was the intention of congress to put a creditor who had innocently taken a preference in a worse plight than a creditor who had knowingly done so. But to that conclusion we are asked to come. The appellant's argument runs thus: That although if the appellees had acted with guilty knowledge, their claims as allowed would stand; yet, having taken a preference ignorantly and in good faith, they cannot have the benefit of their subsequent credits which augmented the bankrupts' estate. Certainly a construction leading to a result so unreasonable is not to be adopted unless it is unavoidable by reason of the language employed by the lawmakers. But we think that we are not shut up to such a construction of the act. In the first place, we do not discover in subdivision "c" of section 60 any language which excludes from the equitable principle of that paragraph creditors who have taken preferences innocently. We do not see that we are bound to give to the words "set off" and "recoverable" such a technical meaning as will lead to unjust discrimination. The clause does not say recoverable "by suit." The views expressed by the circuit court of appeals of the Seventh circuit in McKey v. Lee, 45 C. C. A. 127, 129, 105 Fed. 923, 926, commend themselves to our judgment as sound. It is there well said by Judge Grosscup, speaking for the court:

"A thing is 'recoverable' when it is susceptible of being 'regained,' 'gotten back.' The law provides, alternatively, for the regaining of the preferential payments by the trustee—First, by visiting the creditor with the danger of penalty,—the disallowance of any portion of his claim; and, secondly, in case of the knowing creditor, the right upon the part of the trustee to bring a suit. In either case the payments are gotten back,—there is a recovery; and in both, whether under stress of the penalty, or by virtue of a suit, it is the law that makes them recoverable."

We know that in Pirie v. Trust Co., 182 U. S. 438, 455, 21 Sup. Ct. 906, 913, 45 L. Ed. 1171, the supreme court, in discussing a different question, incidentally remarked:

"Nor, again, do we find anything which militates against our conclusion in subdivision 'c' of section 60. That subdivision is applicable to the cases arising under 'b,' and allows a set-off which otherwise might not be allowed."

But this observation by no means implies that subdivision "c" is applicable only to such cases, and does not apply to cases of preferences innocently received, and followed by new credits given in good faith, and to the enhancement of the bankrupt's estate.

While there is a conflict of opinion between district judges and between the circuit courts of appeals as to the meaning of the terms used in subdivision "c" of section 60, we think, with the learned judge below, that the weight of authority sustains the construction which the referee in bankruptcy adopted here, and the court below approved.

But the case is open to another view equally favorable to the appellees. Upon the true interpretation of paragraph "a" of section 60, the preference in such case as this is the net gain to the creditor upon the transactions between him and the debtor. The net balance in favor of the creditor is the real preference under the law. For only to the extent of such net gain does the creditor "obtain a greater percentage of his debt than any other creditors of the same class." And so, on the other hand, only to the amount of the net gain to the creditor is the estate of the debtor impaired. If, then, a creditor innocently preferred has given return credits afterwards, he has surrendered his preference to the extent of such return credits. To effectuate justice, both sides of the account are to be considered in the case of a creditor who innocently has received preferences, and afterwards in good faith has given the debtor further credit, without security, for property which has become a part of the debtor's estate. Otherwise it is plain that such innocently preferred creditor would be compelled to surrender his preference a second time before he could prove his claim against the bankrupt's estate. We find support for these latter views in the decision of the circuit court of appeals for the First circuit in the case of In re Dickson (Dickson v. Wyman), 49 C. C. A. 574, 577, 111 Fed. 726, 728. And we cannot do better than here quote the forcible observations of Judge Putnam, who, speaking for the court, said:

"It is beyond all reason to hold, because a creditor has, in the ordinary course of business, during the four months preceding bankruptcy, received payments which under some circumstances might operate as a preference, in some views of the law, that that fact can be held to bar the proof of his claim, when, looking at all the transactions together, they demonstrate not only that they were without any intention to acquire any unjust preference, but also that they have increased the net indebtedness to the creditor, and correspondingly increased the bankrupt's estate. In order to avoid so unreasonable a result, we might say that all the transactions covered by the account current should be regarded as one, so that it could not be held that the effect of the payments was to enable the creditors at bar to obtain a greater percentage of their debt than any other creditor of the same class, within the meaning of paragraph 'a' of section 60."

We need do no more than add that we are clearly of opinion that the order here appealed from was rightly made; and accordingly it is affirmed.