In re SAGOR et al.

Appeal of AMERICAN WOOLEN CO.

(Circuit Court of Appeals, Second Circuit. February 25, 1903.)

No. 63.

1. BANKRUPTCY—PREFERENCES—PAYMENT AND NEW SALES UNDER RUNNING
  ACCOUNT.
      Payments by an insolvent on a running account for goods, where new
    sales succeed such payments, and the net result is to increase the in-
    debtedness, do not constitute preferential transfers of property, under
    Bankr. Act 1898, § 60a [U. S. Comp. St. 1901, p. 3445].

Appeal from the District Court of the United States for the South-
ern District of New York.

In Bankruptcy. This cause comes here upon appeal by the Ameri-
can Woolen Company, a creditor of the bankrupts, from a judgment
of the District Court, rejecting its claim.

Lee M. Friedman and David J. Gallert, for appellant.

M. D. Stiver, for respondent.

Before WALLACE, LACOMBE, and COXE, Circuit Judges.

LACOMBE, Circuit Judge. The following excerpts from the opin-
ion of the referee succinctly state the facts and the question presented
thereon:

"The American Woolen Company's proof of claim for merchandise sold
and delivered shows forty-three different items, aggregating net $16,530.42,
the items being chiefly in three figures, and the dates of the items ranging
in a period from January 31, 1901, to July 2, 1901, both dates inclusive.
Each of these items represents merchandise purchased on its date, and pay-
able at a specific subsequent date. Within the period above named, and
between May 4th and June 12th, both dates inclusive, specified groups of
bills of the company, which do not figure in the proof of claim offered, were
paid by the bankrupts while insolvent to the company, the latter not knowing
and not having reasonable cause to know such insolvency. The bills so paid
aggregate $4,322.82." "Notwithstanding its feature that the items of the
transaction between the company and the bankrupts consisted of separate
bills of goods bought on distinct dates, some of which were paid for spe-
cifically on specific dates (which seems to be at the most nothing more than
the purchase of and payment for so much merchandise on such dates),
* * * the transaction between the parties presents all the features of an
open and running merchandise account, though itemized, and does not con-
stitute a series of distinct and independent debts. * * * It does not seem
that at any time the relation of debtor and creditor had ceased to exist be-
tween the parties, and the transactions between them closed."

The referee and the district judge held that the sum of $4,322.82
cash received during the period of insolvency must be returned be-
fore the American Woolen Company could file its claim, on the au-
thority of section 57g of the bankrupt act [U. S. Comp. St. 1901,
p. 3443], and of Pirie v. Chicago Title & Trust Co. (May 27, 1901)
182 U. S. 438, 21 Sup. Ct. 906, 45 L. Ed. 1171.

Examination of the accounts discloses these additional facts: The
sales made to the bankrupt subsequent to the first of the payments
which he made during insolvency, i. e., the sales on and subsequent
to May 9th, aggregate $4,427.82, no part of which has been paid.

¶ 1. See Jaquith v. Alden, 23 Sup. Ct. 649.

The sales made to the bankrupt subsequent to the last payment during insolvency, i. e., subsequent to June 12th, aggregate $3,863.34. It is apparent that the net result of the transactions subsequent to insolvency has been to increase the bankrupt's indebtedness to the claimant and to increase the bankrupt's estate to the like amount— a condition of things which it may easily be conjectured would not have happened if the bankrupts had not by their payments induced the giving to them of further credit.

In view of the conclusion we have reached upon the merits, some questions as to practice which have been argued need not be discussed.

The sections of the bankrupt act relevant to the questions raised on this appeal are as follows:

"Sec. 60a. A person shall be deemed to have given a preference if, being insolvent, he has procured or suffered a judgment to be entered against himself in favor of any person, or made a transfer of any of his property, and the effect of the enforcement of such judgment or transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class. [U. S. Comp. St. 1901, p. 3445.]

"Sec. 60b. If a bankrupt shall have given a preference within four months before the filing of a petition, or after the filing of the petition and before the adjudication, and the person receiving it, or to be benefited thereby, or his agent, acting therein, shall have had reasonable cause to believe that it was intended thereby to give a preference, it shall be voidable by the trustee, and he may recover the property or its value from such person.

"Sec. 60c. If a creditor has been preferred, and afterwards in good faith gives the debtor further credit without security of any kind for property which becomes a part of the debtor's estates, the amount of such new credit remaining unpaid at the time of the adjudication in bankruptcy may be set off against the amount which would otherwise be recoverable from him."

"Sec. 57g. The claims of creditors who have received preferences shall not be allowed unless such creditors shall surrender their preferences." [U. S. Comp. St. 1901, p. 3443.]

"Sec. 68a. In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be stated, and one debt shall be set off against the other, and the balance only shall be allowed or paid." [U. S. Comp. St. 1901, p. 3450.]

There have been many and conflicting decisions disposing of the questions raised by the application of these sections to the facts in different cases. Among such questions are these: (1) Is a payment of money a "transfer of property"? (2) Does section 57g apply when the creditor acted in good faith, was ignorant of the debtor's insolvency, and had no reasonable cause to believe the transfer was a preference? (3) Does section 60c, the set-off clause, apply only to the cases provided for in section 60b, or does it also apply to those covered by section 60a? (4) What is the precise meaning of the words in section 60a: "The effect * * * will be to enable any one of his creditors to obtain a greater percentage of his debts than any other of such creditors of the same class"? (5) Do payments and sales under running account, where new sales succeed payments, and the net result is to increase the indebtedness, constitute a preferential transfer, under section 60a?

In Pirie v. Chicago Title & Trust Co., 182 U. S. 438, 21 Sup. Ct. 906, 45 L. Ed. 1171, decided May 27, 1901, the first two of these questions were specifically answered in the affirmative. As to the third question the opinion of the court was clearly expressed; but

it may fairly be held that, with the other questions disposed of, an answer to it was not necessary to a decision, and it was not discussed. The fourth and fifth questions were not considered; the fifth, indeed, did not arise, for the statement of facts certified to the court recited only the payment of $1,336.79 on an indebtedness of $4,403.77. The facts in the case at bar present the situation set forth in the fifth question, and in examining the authorities it will be necessary to consider only those in which a similar situation is presented.

In re Teslow, 4 Am. Bankr. Rep. 757, 104 Fed. 229, was decided by Judge Lochren, February, 1900. The statement of facts shows that goods were sold to the bankrupt after a payment was made by him, but the question presented here was not suggested, discussed, or decided.

In re Fixen & Co., 42 C. C. A. 354, 102 Fed. 295, 50 L. R. A. 605, was decided by the Circuit Court of Appeals for the Ninth Circuit, May, 1900. Sales were made subsequent to the receipt of payments, but the total payments during insolvency exceeded the sales during same period, so that the net result was to reduce the indebtedness. The situation suggested by the fifth question did not arise and was not discussed. In re Christensen (D. C.) 101 Fed. 802, was decided by Judge Shiras May, 1900. The facts were similar to those at bar, but the discussion was confined to the set-off clauses 60c and 68. The question here discussed was not presented. In re Soldosky (D. C.; Lochran, District Judge, Oct., 1901) 111 Fed. 511, and In re E. O. Thompson Sons (D. C.; McPherson, District Judge, Jan., 1902) 112 Fed. 651, present parallel cases to the one at bar, but the fifth question was not discussed. They were decided on the "set-off" clauses. In re H. C. King Co. (D. C.; Lowell, District Judge, Jan. 22, 1902) 113 Fed. 110, the creditor knew of the bankrupt's insolvency. In Kahn v. Cone Export Co., 53 C. C. A. 92, 115 Fed. 290, Fifth Circuit, the facts are not fully stated, but the decision refers only to the construction of section 60c. The same may be said of In re Keller, 6 Am. Bankr. Rep. 343, 109 Fed. 118.

The first discussion of the question upon which the appellant here relies is found in the opinion of the Circuit Court of Appeals, First Circuit, by Putnam, J., In re Dickson (Nov. 15, 1901) 49 C. C. A. 574, 111 Fed. 726, 55 L. R. A. 349. The creditors in that case "had been dealing with the bankrupt, selling him merchandise from time to time, at short intervals, and receiving payment therefor substantially every month, each sale being paid for by itself; that is to say, each bill of merchandise sold one month was separately paid for the same month or soon after. The sales, however, and the payments, were entered to the same running account." The account showed that the result of sales and payments during the period of insolvency had been to increase the indebtedness of the bankrupt to the creditor from $804.21 to $2,174.20. The facts, therefore, are identical with those in the case at bar. The court held that the decision in the Pirie Case requires a literal construction of section 57g, and that any creditor who has received a preferential payment, however innocently, must comply with that paragraph before he can prove any claim whatever. The court then adds:

"While the Supreme Court has adopted a literal construction of the statute in question, and we are bound to follow it, there must nevertheless be a limit to that method of interpretation, and these cases reach it. It is beyond all reason to hold, because a creditor has, in the ordinary course of business, during the four months preceding bankruptcy, received payments which under some circumstances might operate as a preference in some views of the law, that that fact can be held to bar the proof of his claim, when, looking at all the transactions together, they demonstrate not only that they were without any intention to acquire any unjust preference, but also that they have increased the net indebtedness to the creditor, and correspondingly increased the bankrupt's estate. In order to avoid so unreasonable a result, we might say that all the transactions covered by the account current should be regarded as one, so that it could not be held that the effect of the payments was to enable the creditors at bar to obtain a greater percentage of their debt than any other creditor of the same class, within the meaning of paragraph 'a' of section 60."

The next authority which discusses the question is Petersen **v.** Nash (8th Circuit, Nov. 4, 1901) 55 C. C. A. 260, 112 Fed. 311, 55 L. R. A. 344. The decision deals mainly with the "set-off" clause, on a construction of which the case was decided, but the opinion contains the following:

"Nash Bros., by delivering merchandise to the debtor within four months next preceding the institution of proceedings in bankruptcy by her, and extending credit to her therefor, and doing this in the ordinary course of business without knowledge of insolvency, in good faith enhanced the value of the debtor's estate, and while so doing in like good faith received payments on general account for an amount less in the aggregate than the value of the merchandise delivered to her. The giving and receiving, under such circumstances, may properly enough be regarded as one transaction, resulting not in a preferential payment to the creditor, but in reality in the creation of an indebtedness in favor of the creditor for the difference between the two."

When the question next came before the Circuit Court of Appeals, Eighth Circuit (Kimball v. Rosenham Co. [March 24, 1902] 52 C. C. A. 33, 114 Fed. 85), it was more fully discussed, and was the point on which the cause was decided. The following excerpts present the argument which commended itself to the court:

"It is not every transfer of property or payment of money that will constitute a preference, but such transfers or payments only as enable the creditors receiving them to obtain greater percentages of their debts than other creditors of the same class. Is a creditor who, subsequent to the receipt of payment on an account current, extends to his debtor new credits, in excess of the amount of the payments, for merchandise which actually becomes a part of the debtor's estate, thereby 'enabled to obtain a greater percentage of his debt' than other creditors of the same class? Take the case in hand: Before the $850 was paid the creditor had a claim for $1,878.13 still owing for goods sold before that time, and $850 more, in all $2,728.13. After the payments were made it extended new credits, and put into the estate of the debtor new goods, which amounted to $1,506, on account of which it has received nothing. Hence at the time of the adjudication in bankruptcy its claim was $3,384.13, while it was only $2,728.13 before the payments were made. The result is that by virtue of the payments and the subsequent credits the estate of the bankrupt has been increased to the amount of $656, the claim of the creditor has been enhanced to the same amount, and its loss in a proportionate sum. It has received no benefit, but, on the other hand, has incurred a positive loss by the transaction. * * * It may be said that before the $850 was paid the claim of the Rosenham Company was $2,728.13; that after its payment it was only $1,878.13; and that the moment the payment was made the creditor had secured thereby a preference. This would undoubtedly have been true if the account and the trans-

action had closed there. But it did not, and it is the actual account and the real transaction, and not those which might have been, but were not, that condition this case and its decision. It was not the purpose or the intention of the parties to this transaction to give the creditor a preference by the payment of this $850, and that payment never had that effect. Parties are presumed to intend the ordinary and natural consequences of their acts. The customary and natural effect of payments upon a live account current is the continuance of the account and the extension of new credits. Stop payments upon such an account, and new credits are not extended, and the account closes. Make payments, and the account continues and further credit is given. The payments upon the old credits constitute the inducement for the extension of new credits, without which those credits would not be made. * * * If at the time when this debtor paid the $850 on the old credits it had bought goods of the value of $1,506 of its creditor, and had paid $850 therefor, leaving a balance ·of $656 owing for them, no one would have claimed that it had thereby given a preference. No more did the payment of the $850 on the old credits, which induced the new credits of $1,506. The actual effects of the two transactions upon the claim of the creditor, upon the estate of the bankrupt, and upon the claims of the other creditors would have been identical, and their legal effects could not be different. In neither the partial payment, which induces the supposed sale and immediate delivery of goods, nor in the payment upon the old credits, which induces new sales upon credit in excess of its amount, is 'the effect of the enforcement of' the payment 'to enable' the creditor, in the words of the law, 'to obtain a greater percentage of his debt than other of such creditors of the same class.' In both the loss is the creditor's and the gain is the estate's. Nor can the payment of the money on the old credits, which induces the new credits, be either justly or lawfully segregated from the new credits' it induces for the purpose of finding a preference that never in fact existed, and never was intended, any more than the partial payment for goods when bought can be segregated from that sale for such a purpose. The payments, and the new credits they induce, are parts of the same transaction, inseparable in the intent of the parties and in their actual and legal effect."

The same question arose in the Circuit Court of Appeals, Third Circuit, April, 1902 (Gans v. Ellison, 52 C. C. A. 366, 114 Fed. 734). That court discussed the subject of set-off and the construction of section 60c. It then said:

"Upon the true interpretation of section 60a the preference in such a case as this is the net gain to the creditor upon the transactions between him and the debtor. The net balance in favor of the creditor is the real preference under the law, for only to the extent of such net gain does the creditor 'obtain a greater percentage of his debt than any other creditors of the same class.' And so, on the other hand, only to the amount of the net gain to the creditor is the estate of the debtor impaired. If, then, a creditor innocently preferred has given return credits afterwards, he has surrendered his preference to the extent of such return credits. To effectuate justice, both sides of the account are to be considered in the case of a creditor who innocently has received preferences, and afterwards in good faith has given the debtor further credit, without security, for property which has become a part of the debtor's estate. Otherwise it is plain that such innocently preferred creditor would be compelled to surrender his preference a second time before he could prove his claim against the bankrupt's estate."

And the court quotes with approval from In re Dickson, supra.

In October, 1902, the Circuit Court of Appeals, First Circuit, reaffirmed their former decision, supra. in Jaquith v. Allen, 118 Fed. 270.

From this review of the authorities it appears that no court before which the fifth question, supra, has been argued has answered it in the affirmative, and the Circuit Courts of Appeal in three circuits have

answered it in the negative. In the absence of some expression of opinion by the Supreme Court constraining to a different conclusion, it would seem to be the proper course to concur with these courts in the construction they have given to the sections of the Bankrupt Act above quoted, and thus secure a uniform administration of the act—manifestly a desideratum for the mercantile community, to whose transactions such construction peculiarly applies.

The judgment of the District Court is reversed, and the cause remanded, with instructions to allow the claim of the American Woolen Company at the full amount proved.