## In re K. G. WHITFIELD & BRO.

### (District Court, W. D. Tennessee, E. D.)

### No. 1088.

1. **Bankruptcy ⬤⟿311(1)—Deed of trust covering peanuts already pledged held not preference.**

   Where warehouse receipts for peanuts were already pledged to creditor under Shannon's Code Tenn. §§ 3608a42–3608a55, the creditor's taking of deed of trust covering the nuts did not alter the situation of the parties, and hence was not a preference.

2. **Bankruptcy ⬤⟿311(1)—Preference must diminish estate.**

   Unless the estate of the debtor is diminished by reason of the transfer, ordinarily a creditor cannot be charged with having received a preference.

3. **Bankruptcy ⬤⟿151—Trustee and creditors have no higher right than bankrupt.**

   Generally a trustee in bankruptcy does not become vested with any better right or title to the property than was held by the bankrupt when the trustee was appointed, and creditors suing in name of the trustee have no higher rights than trustee.

4. **Bankruptcy ⬤⟿340—To show preference, insolvency and reasonable cause to believe insolvency must be shown.**

   Creditors, suing in name of trustee to have claim of creditor disallowed, in that its deed of trust was a preference, *held* to have burden of showing that at the time of the transfer the bankrupt was insolvent, and that the grantee in the deed of trust had reasonable cause to believe that the enforcement of the deed of trust would enable the grantee to obtain a preference.

5. **Bankruptcy ⬤⟿340—Insolvency at time of transfer not presumed from subsequent bankruptcy.**

   The mere fact, standing alone, that subsequent to the transfer of property a debtor is adjudged a bankrupt does not raise the presumption that he was insolvent at the time of the transfer, although subsequent adjudication of bankruptcy under certain conditions might warrant the presumption.

6. **Bankruptcy ⬤⟿340—Evidence held not to show reasonable cause to believe bankrupt insolvent.**

   Evidence on petition to have claim of creditor disallowed, in that its trust deed was a preference, *held* not to show grantee in trust deed had reasonable cause to believe that bankrupt was insolvent.

In Bankruptcy. In the matter of K. G. Whitfield & Bro., bankrupt. On petition to have claim of the American National Bank disallowed. Claim allowed.

⸻

⬤⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ROSS, District Judge. K. G. Whitfield & Bro. constituted a partnership firm composed of K. G. Whitfield & J. H. Whitfield, doing business in Benton county, Tenn. In the course of their business the firm purchased peanuts in the peanut section along the Tennessee river for Lumis & Co., of Chicago, Ill. It was the custom of the firm to draw drafts on Lumis & Co., deposit those drafts with the People's Bank & Trust Company, of Camden, Benton county, Tenn., where they would be given credit for the amounts thereof; they would then draw checks on this account, payable to the parties from whom the peanuts were purchased. Pursuing this course in the early part of 1920, drafts were drawn which Lumis & Co. declined to honor. Whitfield & Bro. had been credited with the amount of the drafts and had drawn checks on the account thus made. As a result, when the drafts were dishonored, a large overdraft was created in favor of the People's Bank & Trust Company against Whitfield & Bro.

The Cumberland Valley National Bank, of Nashville, Tenn., was the correspondent of the People's Bank & Trust Company, and duly organized and chartered under the national banking laws of the United States. The People's Bank & Trust Company was a Tennessee corporation. In February of 1920 the People's Bank & Trust Company procured the Cumberland Valley National Bank to lend to Whitfield & Bro. the sum of $12,000 for the purpose of enabling them to satisfy the overdraft with the People's Bank & Trust Company and continue the peanut business. This loan was negotiated for a period of 30 days, and to secure the same warehouse receipts covering certain peanuts purchased by Whitfield & Bro. were placed as collateral. The originals of these warehouse receipts were held in the vaults of the People's Bank & Trust Company, and copies thereof sent to the Cumberland Valley National Bank. This was done as a matter of convenience, and in addition the payment of the note was guaranteed by the People's Bank & Trust Company, or J. M. Lockhart, as its cashier.

It was the contemplation of the parties at the time of the negotiation of this loan that the peanuts would be sold before the expiration of the note, and for this reason the original warehouse receipts were placed with the People's Bank & Trust Company as stated, so that they might be accessible if the nuts should be sold. However, the nuts were not sold as contemplated, and the note was renewed from time to time until July 12, 1920, when the last renewal was executed. This note was signed by K. G. Whitfield & Bro. as a firm and also by the individual partners. In the meantime the Cumberland Valley National Bank and the American National Bank were regularly consolidated, and the American National Bank took over all the assets of the Cumberland Valley National Bank and succeeded to all its rights, and was a bank likewise duly organized and chartered under the national banking laws of the United States.

Payment not having been made on the last renewal of the note mentioned in February of 1921, the American National Bank filed its bill in the chancery court at Camden, Tenn., against Whitfield & Bro., the individual partners of the firm, the People's Bank & Trust Com-

pany, B. W. Warren, and A. Odle to collect the amount due on the note. Whitfield & Bro. and the individual partners were sued as the makers of the note, People's Bank & Trust Company was sued as the guarantor of the payment of the note, while Warren and Odle were made parties to the suit merely by reason of the fact that the peanuts mentioned were stored in their respective warehouses. Soon after the filing of this bill, and on the 23d day of March, 1921, this suit was compromised. In compliance with the terms of the compromise a note was executed by K. G. Whitfield & Bro. as a firm, by the individual partners, K. G. Whitfield and J. H. Whitfield, and by Delia Whitfield, the wife of J. H. Whitfield, in the sum of $12,000 payable to the American National Bank, due six months from its date, March 23, 1921, and which recites in its face that it was secured by two deeds of trust. Two deeds of trust were executed to secure the note, one of which was made by the Whitfields, covering certain real estate and the peanuts for which the warehouse receipts mentioned had been executed, and the other was made by J. M. Lockhart and wife, covering certain real estate. Both deeds of trust were recorded March 26, 1921.

On April 18, 1921, K. G. Whitfield & Bro. filed a voluntary petition in bankruptcy and were duly adjudged bankrupts. May 18, 1921, the American National Bank sold the peanuts covered by the deed of trust for the sum of $1,626.39 and applied the same as a credit on the note of March 23, 1921, and on the 11th day of July, 1921, filed with the referee its proof of claim as to the remainder of said note, in the sum of $10,373.61, which claim was allowed.

On December 15, 1921, certain creditors of Whitfield & Bro. filed their petition with the referee, seeking to have said claim of the American National Bank disallowed. The petition states that C. V. Hawley, the trustee in bankrutcy, declined to contest the claim of the American National Bank; so the creditors filed the petition in his name for their use and benefit, as well as the use and benefit of all other creditors having bona fide, provable claims against the estate. Answer was filed to this petition by the American National Bank, and the matter proceeded to a hearing before the referee, where evidence was offered by both parties, and upon consideration of all of which the referee, on the 13th day of June, 1921, entered an order sustaining the petition of the contestants, holding that the transfer of the property mentioned on March 23, 1921, enabled said bank to receive a preference, that the claim should not be allowed until the bank had accounted for such preference, or until the other general creditors should receive a dividend and pro rata equal to the amount received by the bank. The bank was taxed with the costs of that proceeding.

[1] The only question presented is whether or not the American National Bank obtained a preference by reason of the transfer to it of the peanuts mentioned in the deed of trust of March 23, 1921. This must be answered in the negative.

The contracts relative to the various notes, loans, and deeds of trust were manifestly Tennessee contracts, and governed by the laws of

Tennessee. Sections 3608a42 to 3608a55, inclusive, of Shannon's Code of Tennessee (1917), cover various transfers and negotiations of warehouse receipts such as those in question, and authorize the pledging, depositing, or negotiation of receipts, as was done in this instance in February of 1920. Under the law this amounted to a transfer of the receipts and the peanuts called for therein to the Cumberland Valley National Bank, to be held as security for the loan made by it to Whitfield & Bro. The fact that the originals were held in the vaults of the People's Bank & Trust Company, at Camden, Tenn., would not destroy the validity of the transfer, for in that instance the bank acted as the agent of the Cumberland Valley National Bank, and certainly the firm of Whitfield & Bro. was not in position to question the validity of this transfer. Nor does the fact that the People's Bank & Trust Company was a guarantor of this debt for Whitfield & Bro. affect the situation, so far as this transfer was concerned.

The American National Bank lawfully succeeded to all the rights of the Cumberland Valley National Bank as to this security, and at the time of the compromise of the suit instituted by it to recover on the note it duly held said receipts and was entitled to proceed against the peanuts called for therein. The taking of the deed of trust covering said nuts did not alter the situation of said parties as to the nuts, nor did it in any wise alter or affect the estate of Whitfield & Bro., so far as other creditors were concerned. In that respect there was neither a lessening nor enlarging of the security of the bank, and certainly where this is true no preference could have been created by the transfer. This proposition is well settled. In re Sagor, 121 Fed. 658, 57 C. C. A. 412, 9 Am. Bankr. Rep. 361; In re Dickson, 111 Fed. 726, 49 C. C. A. 574, 55 L. R. A. 349, 7 Am. Bankr. Rep. 186; Newport Nat. Bank v. Nat. Herkimer County Bank, 225 U. S. 178, 184, 32 Sup. Ct. 633, 56 L. Ed. 1042; N. Y. County Nat. Bank v. Massey, 192 U. S. 138, 24 Sup. Ct. 199, 48 L. Ed. 380; Continental Trust Co. v. Chicago Title, etc., Co., 229 U. S. 435, 33 Sup. Ct. 829, 57 L. Ed. 1268; Root Mfg. Co. v. Johnson, 219 Fed. 397, 135 C. C. A. 139; In re Noel (D. C.) 137 Fed. 694, 14 Am. Bankr. Rep. 715; Chatta. Nat. Bank v. Rome Iron Co. (C. C.) 102 Fed. 755, 4 Am. Bankr. Rep. 441; Deland v. Miller, etc., Bank, 119 Iowa, 368, 93 N. W. 304, 11 Am. Bankr. Rep. 744; In re Fire Brick Co., 181 Fed. 641, 104 C. C. A. 371, 25 Am. Bankr. Rep. 323; Holdredge First Nat. Bank v. Johnson, 68 Neb. 641, 94 N. W. 837, 4 Ann. Cas. 485; Bernhisel v. Firman, 89 U. S. (22 Wall.) 170, 22 L. Ed. 766; Sawyer & Frazier v. Turpin, 91 U. S. 114, 23 L. Ed. 235; In re Lynn Camp Coal Co. (C. C.) 168 Fed. 999; Sexton v. Kessler, 172 Fed. 539, 97 C. C. A. 161, 40 L. R. A. (N. S.) 639; Black on Bankruptcy (3d Ed.) § 581, p. 1190, and authorities cited in note 127; Id. pp. 1198, 1199, § 586.

[2] Unless the estate of the debtor is diminished by reason of the transfer, ordinarily a creditor cannot be charged with having received a preference. Western Tie & Timber Co. v. Brown, 196 U. S. 502–509, 25 Sup. Ct. 339, 49 L. Ed. 571; Rector v. City Deposit Bank

Co., 200 U. S. 405–410, 26 Sup. Ct. 289, 50 L. Ed. 527; National Bank of Newport v. National Herkimer County Bank, 225 U. S. 178, 32 Sup. Ct. 633, 56 L. Ed. 1042.

[3] As a general proposition, a trustee in bankruptcy does not become vested with any better right or title to the property than was held by the bankrupt when the trustee was appointed. Hewitt v. Berlin Machine Works, 194 U. S. 296, 24 Sup. Ct. 690, 48 L. Ed. 986; York Mfg. Co. v. Cassell, 201 U. S. 334, 26 Sup. Ct. 481, 50 L. Ed. 782. And certainly the creditors, suing in the name of the trustee, could acquire no higher rights than the trustee held.

[4] In another view of this case, the claims of the contestants would have to fail. The law placed upon them the burden of showing that at the time of the transfer Whitfield & Bro. as a firm was insolvent, and that the American National Bank had reasonable cause to believe that the enforcement of the deed of trust made by the firm would enable it to obtain a preference. Tumlin v. Bryan, 165 Fed. 166, 91 C. C. A. 200, 21 L. R. A. (N. S.) 960; Barbour v. Priest, 103 U. S. 293, 26 L. Ed. 478; In re Klein (6 Cir.) 197 Fed. 241, 116 C. C. A. 603; Kimmerlee v. Farr, 189 Fed. 295, 111 C. C. A. 27; Turner v. Schaeffer, 249 Fed. 654, 161 C. C. A. 564, 40 Am. Bankr. Rep. 829. See, also, authorities cited to note 504, § 614, p. 1249, Black on Bankruptcy (3d Ed.). The author last cited states on page 1250, § 614:

"One thing absolutely essential to constitute a voidable preference is that the debtor should have been insolvent at the time it was given, and the trustee has the burden of proving this fact."

Many authorities are cited in note 509 to support this text, one of which is In re F. M. & S. Q. Carlile (D. C.) 199 Fed. 612, 29 Am. Bankr. Rep. 373.

[5] The mere fact, standing alone, that subsequent to the transfer of property a debtor is adjudged a bankrupt, does not raise the presumption that he was insolvent at the time of the transfer. In re Chappell (D. C.) 113 Fed. 545, 7 Am. Bankr. Rep. 608. However, an adjudication of bankruptcy shortly following the transfer under certain conditions might warrant the presumption. In re Dix (D. C.) 267 Fed. 1016, 46 Am. Bankr. Rep. 199.

[6] So far as the record in this case is concerned, it is wholly wanting to show that the American National Bank, or any one acting for it, had any knowledge of the financial condition of the bankrupts at the time the transfer in question was made. In fact, there is nothing to show that at that time the bankrupts owed one cent other than that due the American National Bank, so far as the bank knew or had reason to believe. There was in reality no condition which called upon the American National Bank to make inquiry into the financial condition of the bankrupts, for the reason that the bank had a guarantor as to its debt, and one to whom it could look for payment of the note executed to it, whether anything might have been realized from Whitfield & Bro. or not. Certainly there was nothing from which the bank might reasonably anticipate that the firm of Whitfield & Bro. was insolvent, or that the transfer to it would amount

to a perference as against other creditors, for there was nothing appearing to show that there were other creditors. There was no probable cause to lead the bank to believe that the transfer to it would work a preference so far as this record discloses. The matter was not discussed, nor was there any reason for its having been discussed, in view of the guaranty which the bank held, and there was nothing to cause a reasonably prudent man to have instituted an investigation as to the financial condition of Whitfield & Bro.

Counsel for the creditors filed an elaborate argument in the case, but refer to no authorities to support their contentions. One of two conclusions might be drawn from such failure to cite authorities. They either did not deem it necessary to cite authorities, or they were unable to find authorities to support their arguments. The court is of opinion the latter conclusion would be correct.

In either of the two views above discussed, the claim of the contestants could not be maintained. It therefore follows that the referee was in error in sustaining the petition filed to have the claim of the American National Bank disallowed, in disallowing the claim, and taxing the bank with the costs of that proceeding. A decree will be entered, allowing the claim of the bank, declaring the transfer of the property not to have created a voidable preference, and adjudging the costs against the contestants.