### TALTY v. ROSS.

### SAME v. ROSENTHAL.

(District Court, D. Massachusetts. June 18, 1926.)

Nos. 2479, 2475.

**1. Bankruptcy ⟋169.**

In case of open account of mutual debits and credits between bankrupt and another, amount of preferences is excess of payments to him by bankrupt over credits extended by him to it during four-month period.

**2. Bankruptcy ⟋169.**

There being no open account of mutual debits and credits between bankrupt and another, he is, under Bankr. Act, § 60c (Comp. St. § 9644), entitled to have set off against preferences received by him credits extended by him to it subsequent to first preferential payment.

**3. Bankruptcy ⟋169.**

Payments by bankrupt to its president to reimburse him for expenses he had incurred on its behalf, or for money advanced to meet pay roll, or on account of his having exchanged his check with others to give it temporary use of the money, are not preferences.

In Equity. Suits by Harry T. Talty, trustee in bankruptcy, one against M. J. Ross, the other against Isador Rosenthal. Decrees for plaintiff.

See, also, 14 F.(2d) 239.

Charles J. Goldman, of Lynn, Mass., for plaintiff.

Coughlin & Jacobs, of Lynn, Mass., for defendant.

BREWSTER, District Judge. The above are suits in equity brought by the trustee in bankruptcy of the Lynn Cut Sole Company to recover preferences voidable under section 60(b) of the Bankruptcy Act (Comp. St. § 9644).

The bankrupt was engaged in the business of manufacturing and dealing in merchandise used in the manufacture of shoes. The corporation was adjudicated bankrupt upon an involuntary petition filed December 17, 1924. The defendant Rosenthal is the father of the defendant Ross. Rosenthal was president, and Ross was treasurer, of the corporation. They were actively connected with the management of the business, and were the principal stockholders in the corporation, except that shortly before the failure Ross resigned as treasurer, but did not entirely sever his connection with the affairs of the corporation. During the four months prior to bankruptcy both defendants received sums of money from the bankrupt, and it is the aggregate of these payments that the trustee is seeking to recover in these suits. The question presented is the same in both cases, and may properly be considered in one opinion.

Neither the plaintiff nor the defendants were able to produce certain books of the corporation at the hearing on the merits. These books would undoubtedly have thrown light upon many transactions which the evidence leaves obscure. There was, however, introduced in evidence a ledger kept by the bankrupt which contained a private account with each of the defendants showing items of debit and credit, each defendant being charged with certain sums paid to him from time to time and credited with certain sums received from each defendant, or with certain sums due for salary. Except as the evidence indicates that the books were in charge of an employee somewhat inexperienced, there is nothing in the case to warrant me in finding that the private accounts in the ledger did not substantially represent the transactions between the corporation and the defendants. Some items are capable of being verified by entries on check stubs, but such corroborative evidence unfortunately does not extend over the entire four-month period. As the evidence was left with me, I feel bound to accept these accounts as a fairly accurate statement of the sums paid and credited to each

defendant. I also find that during the entire period of four months prior to bankruptcy the corporation was insolvent within the meaning of the Bankruptcy Act, and that each of the defendants had knowledge of such insolvent condition. I also find that, notwithstanding this knowledge of insolvency, the defendants advanced from time to time money to the corporation in good faith, in the hope of improving the financial condition and ultimately averting disaster.

[1] It seems to be well established in the federal courts that, in a case of a claim based upon an open account of mutual debits and credits, the real preference under the law is the net balance in favor of the creditor "for only to the extent of such net gain does the creditor 'obtain a greater percentage of his debt than any other creditors of the same class.' And so, on the other hand, only to the amount of the net gain to the creditor is the estate of the debtor impaired." Gans v. Ellison, 114 F. 734, 52 C. C. A. 366; Remington on Bankruptcy, § 1660. This doctrine has met with approval in the Supreme Court. See Jacquith v. Alden, 189 U. S. 78, 23 S. Ct. 649, 47 L. Ed. 717; Yaple v. Dahl-Millikan Grocery Co., 193 U. S. 526, 24 S. Ct. 552, 48 L. Ed. 776; Joseph Wild & Co. v. Provident Life & Trust Co., 214 U. S. 292, 29 S. Ct. 619, 53 L. Ed. 1003.

[2] If this doctrine is to be applied in the cases at bar, the amount of the preferences received by the defendants (and I find they received preferences) would be the difference between the sums paid to them by the corporation in the four-month period and the credits extended by the defendants to the corporation during the same period. But in the cases at bar I am not at all convinced that we have such open accounts of mutual debits and credits as would permit the application of the above doctrine, especially in view of the findings in the cited cases that the payments were made in the usual course of business, and the creditor receiving them was ignorant of the insolvency of the debtor.

Very substantial payments were made to both defendants within a few days of bankruptcy. They were made under such circumstances as would compel the conclusion that the prime object of the transaction was not only to prefer a favored creditor, but to put in the hands of the Rosenthal family money that really belonged to creditors. Under section 60 (c) of the Bankruptcy Act (Comp. St. § 9644), each defendant is entitled to have set off against the sums received as preferences the sums of the credits extended to the corporation.

Applying the above rules, I find:

First, as to the defendant Ross, that within the four months prior to December 17, 1924, the corporation paid to this defendant $3,290 as follows:

| | | |
|---|---|---:|
| October | 15, 1924 | $ 390.00 |
| November | 20, 1924 | 700.00 |
| November | 22, 1924 | 1,000.00 |
| November | 25, 1924 | 1,000.00 |
| December | 9, 1924 | 125.00 |
| December | 9, 1924 | 75.00 |
| | | $3,290.00 |

During the same four-month period the corporation became indebted to him for money loaned or unpaid salary to the amount of $1,318, but subsequent to October 15, 1924, Ross was credited with $495, leaving a balance of $2,795, which amount the plaintiff is entitled to recover in No. 2479.

[3] Second, as to the defendant Isador Rosenthal. According to the books of the bankrupt corporation, this defendant received within the four-month period numerous payments aggregating $2,825. These payments ranged all the way from $16 to $950. On the other side of the ledger, during the same period, it appears that the corporation became indebted to him for money advanced or unpaid salary to the amount of $3,538. In this sum is included $1,764.65, which the evidence leaves wholly unexplained. It appears to have been entered in the regular course of business, and there is nothing to indicate that it was not a proper credit to be given the defendant. Undoubtedly, many of the smaller items were reimbursements for expenses that the defendant had incurred on behalf of the corporation or were to reimburse him for money advanced to meet the pay roll within the four-month period. He also exchanged with others his personal checks, and some entries relate to these transactions. The bankrupt temporarily had the use of the money obtained in this way.

I find that many of the items appearing on the private ledger account with this defendant fall into one or the other of the above classes, and ought not to be regarded as preferences. I do find, however, that on November 18, 1924, the corporation paid him $950, and again on December 1, 1924, $300. I find that these payments were made to this defendant with an intent to prefer him over other creditors, and from this amount he has a right to offset the credits since November 18, 1924, which I find to be $186, leaving a balance of $1,064 which the plaintiff is entitled to recover in No. 2475 against the defendant Rosenthal.

Appropriate decrees may be entered accordingly.