## BEEMAN & WIFE VS. COWSER ET AL.

To enable a wife to hold property separately under the married woman's law, it must be recorded as hers in the county in which she lives, by being scheduled under the law : or if devised, granted, decreed or transferred to her, it must be by words that expressly set forth, that the property is to be held by her exempt from the liabilities of her husband.

Chancery will decree a settlement on the part of the wife out of her separate estate, whenever its aid is invoked to reduce such estate into the possession either of her husband, his representatives or creditors.

This equity attaches upon the proceeds of the sale of the wife's estate in the hands of the purchaser.

The general rule is, that one-half the fund be settled upon the wife, but the court may, in its discretion, so dispose of a larger portion, or even the whole if circumstances justify it.

*Appeal from Union Circuit Court in Chancery.*

Hon. LEN B. GREEN, Circuit Judge.

CARLETON, for appellants.

The married woman's law gives the wife a separate estate in the land and negroes which came to her since the passage of the act, which is not defeated by a failure to file a schedule, which is a mere registry of title, and may be done at any time. *Gould's Dig.*, chap. 111, 1, 2, 3; *Ferguson & Neill vs. Moore & wife*, 19 *Ark*. 379.

If Mrs. Beeman cannot hold under the law, she is still entitled to a settlement, and the court in its discretion may settle a part or the whole of the fund upon her. 2 *Story's Eq.*, sec. 1411 et seq.; 5 *John. Ch. Rep.* 464; 6 *Ib.* 24; 14 *B. Mon.* 259; 6 *Ib.* 24.

LEE, for the appellee.

A wife is not entitled to the benefit of the married woman's

law unless the property is scheduled. *Lovett & wife vs. Long-mire,* 14 *Ark.* 139.

The wife's right to a settlement is an equitable right—a personal privilege. If any such right exists under our statute, it is to be exercised only upon the maxim that he who seeks equity must do equity. *Willard's Eq. Jur.* 635.

Mr. Justice FAIRCHILD delivered the opinion of the Court.

Cowser, Locke & Collier having become security for Parks Beeman, upon the 12th of October, 1857, Cowser was obliged to pay the debt, with costs and interest, as otherwise the judgment that had been rendered against the joint debtors, that is, against Beeman and his securities, would have been made out of Cowser's property, he having before the payment of the money, availed himself of all the delays of the law. Beeman and Collier were insolvent. Christopher McRae, the father of Beeman's wife, had a considerable property, which, after the payment of liabilities, realized a sum, that, if divided among the eleven heirs, would allow to each, nine hundred and thirty-six 33-100 dollars. McRae died in July, 1855, after the debt of Beeman and his securities had been contracted. No division of the estate of McRae was made or attempted, till after the death of his wife, in July, 1857, when, upon the 1st of December, 1857, the eleven heirs of McRae, all being of age, agreed that John McRae, one of their number, should be selected as their trustee and agent to divide the property among the heirs, and if it could not be divided, to sell it and make distribution of its proceeds, giving to each heir its equal part. Thereupon, the ten heirs, other than John McRae, such as were married women uniting with their husbands, executed a power of attorney, authorizing John McRae to carry the above agreement into effect. The appointed trustee and agent accepted the office and agency, made sale of the estate, and the share of each of the heirs was as above stated. The portion due to Catharine Beeman had never come to the hands of her husband, or herself, as at the time of the commencement of this suit, the 20th of October,

1857, the estate of Christopher McRae was still undivided and unsold.

The bill was filed by Cowser & Locke against Parks Beeman and the ten heirs of Christopher McRae, other than Mrs. Beeman, for the purpose of subjecting her interest in her father's estate to the payment of the money which Cowser had paid for her husband. She was not herself made a party to the bill, upon the pretence that the husband assumed control of her interest, so that his rights as husband had attached thereto.

Mrs. Beeman filed a petition in the case, denying, as did the other heirs that her husband had received or obtained control of her share in her father's estate, or that the same had come to her own possession, averring that it was under the control of John McRae, never having been distributed or paid to her. An injunction was obtained against Parks Beeman and John McRae, to restrain them from concealing further, or interfering with the interest of Parks Beeman in the estate of Christopher McRae, and requiring it to remain as it then was, till the further order of the court. Mrs. Beeman's petition was allowed to be taken as her answer, she being permitted to come in to the case as a defendant.

The case was heard upon the pleadings and accompanying documents: These, that is, reports of the master and of John McRae and the record entries of the cause make up the whole case as here presented. The court below ascertained the amount of Mrs. Beeman's share in her father's estate to be 936 83-100 dollars, as before stated, and that there was due to Cowser from Parks Beeman, on the demand of the bill, eight hundred and six-three 20-100 dollars, which John McRae was ordered to pay to Cowser, out of what was in his hands as the share of Catharine Beeman in her father's estate.

It is contended, on appeal from the decree of the court below, that this share belonged to Mrs. Beeman, as her separate property under our married woman's law. And that, as Cowser had applied to a court of equity to obtain possession of an interest that was coming to her, a settlement should be made upon

her according to the principle adopted by courts of chancery, in setting apart to a wife her equity out of her own portion that is the subject of the suit: And it is claimed for her, that the whole of her portion, as disclosed in this case, should be secured to her as her equity.

To enable a wife to hold property under the married woman's law, it must be recorded as hers in the county where she lives by means of being scheduled under the law, or by being devised, granted, decreed or transferred to her, by words that expressly set forth that the property is to be held by her exempt from the liabilities of her husband. Although Mrs. Beeman might be fully resolved to place her property in her father's estate within the provisions of this law, and claim its protection, she had not done so while it was property in kind, as left by her father, nor since it had been changed to money, had she obtained it to invest in any thing that could be described and scheduled and recorded, so as to give her husband's creditors notice that the particular property specified was not his, but her own separate property. We do not think that Mrs. Beeman's claim to her share in her father's estate, can be given to her in this case as her separate property, under our married woman's law. But we do think that such a case is here presented, as authorizes a provision to be made for Mrs. Beeman. This is done when the husband or his representatives, ask the aid of a court of equity to reach the property of the wife. *Willards Eq. Jurisprudence* 635, 636.

The appellees' misconceive the scope of the wife's equity in restricting it to to an application against the husband alone. The husband's creditors represent him, their claim is only his claim, and both are alike subject to a settlement to be made in favor of the wife. So are all of the authorities. Neither does it prejudice the claim that it is made for the proceeds of the sale of the wife's property in the hands of the purchaser. The following authorities are upon this subject:

" The proceeds of the sale of the wife's land made by her and " her husband, so long as they remain in the hands of the pur-

" chaser, constitute a part of the estate, out of which she has
" a right in equity to a settlement.  The money is, according
" to every principle of right and justice, as much her property
" as the land was before its conversion."  *Moore vs. Moore,* 14
*B. M.* 262.

"The question is, has the wife an equitable right to a settle-
ment out of the unpaid purchase money, arising from the sale
of real estate, which has not been collected or disposed of by
the husband ?  If the creditor of the husband should make ap-
plication to a court of chancery, to subject such a fund to the
payment of the husband's debts, the court would refuse to aid
him, unless upon the condition, that a settlement upon the wife
should first be made, if her situation and circumstances required
it.  No injustice is done to the creditors by the operation of this
rule, because their rights are the same after the conversion of
the wife's real estate, that they were previously.  The real
estate has, with her consent, been converted into personal
estate, to which the husband has the legal right ; but her con-
sent should not be extended by implication to a surrender by
her of all equity to the fund.

"This is, we believe, the first case that has been before this
court, where the wife claimed an equity in the money arising
from the sale of her real estate, when the sale was made by
her and her husband.  In the case of *Athey vs. Knolls,* 6 *B. M.*
24, the land that had descended to the wife in conjunction with
other heirs, from her father, was sold by a decree of a court of
chancery, and that portion of the money to which she was en-
titled was claimed by her as necessary for a support, and her
claim was sustained.  There is no substantial distinction be-
tween that case and this.  In this case, the sale money was in
the hands of the purchaser ; it had not passed into the hands of
the husband, and his right to it was not as perfect as it was in
the other case, where the money had been paid by the pur-
chaser, and passed into the hands of an agent, whether that
agent professed to act for the wife or for the husband.  Accord-
ing, then, to the doctrine settled in that case, the wife here had

28

an equity in this estate, superior to the rights of her husband's creditors, without any extension of this equitable right of the wife beyond its previously recognized limits. The fact that the note for the purchase money was made payable to the husband, cannot prejudice the claim of the wife ; for if it had been made payable to her, the legal right and title to the debt would have been in the husband, just as if the note had been made payable to himself. *Lary vs. Brown*, 13 *B. M.* 296, 297, 298."

This case does not call for an expression when, and how far, the wife's equity will be recognized, when the suit is not brought by the husband, his assignees or creditors to obtain her property.

It only remains to determine the extent of the settlement that shall be made upon Mrs. Beeman. She alleges that her husband was insolvent when Cowser assumed the securityship for him, her father was then alive and Cowser could not look to his estate for indemnity, in any event had no right so to do, Cowser is rich, she and her husband are over fifty three years old; he is an improvident person, that she is entirely destitute of help in the performance of her household labor, except as she is obliged to call for the assistance of her husband and sons, that her health is feeble, she not being able to do a day's work continuously, and for many years has not had much use of her right hand. All the assistance that a court of equity can give, Mrs. Beeman ought to have, we mean in connection with the sum that is claimed to be taken from her. The general rule is, that one-half of the wife's property shall be settled upon her, but the matter rests in the discretion of the court, which will take all the circumstances into consideration and allow to the wife what is equitable, though it be the whole sum in controversy. *Willard's Eq. Jurisdiction* 638 ; *Kennedy vs. Noble*, 5 *Jhs. Ch.* 479 ; *Athey vs. Knolls*, 6 *B. M.* 29.

Under the circumstances of this case, Mrs. Beeman should have the whole of the fund in the hands of John McRae, all that is due to her from her father's estate.

The decree of the court below is reversed, and the case is re-

manded with instructions to the Circuit Court of Union county sitting in chancery, to dissolve the injunction and dismiss the bill of the appellees, and to settle the amount awarded to Mrs. Beeman by some scheme that shall secure it to her free from the influence of her husband and his creditors, and as shall be most promotive of her comfort, and according to equity.

Let the appellees pay the costs of this court, and their own costs in the court below, the remainder to be paid out of the fund.