## CLARK, Assignee, etc., v. HEZEKIAH.

*(District Court, E. D. Arkansas. 1885.)*

1. **HUSBAND AND WIFE MAY, IN EQUITY, CONTRACT WITH EACH OTHER.**
Independently of the married woman's act, courts of equity regard husband and wife as distinct persons, capable of contracting with each other, and if the husband borrows the wife's money, equity will enforce payment of the loan, not only against him, but as well against his representatives, including his assignee in bankruptcy.

2. **WIFE'S EQUITY TO A SETTLEMENT.**
The wife of a bankrupt has, in equity, a right in all cases to an adequate provision out of her own property, and when such property cannot be reached by the assignee in bankruptcy of her husband, without the intervention of a court of equity, the court will compel him to make a competent settlement upon her. This jurisdiction was not abridged by the act of January 11, 1851, (chapter 111, Gould's Dig.,) requiring the wife to file a schedule of her statutory separate property.

3. **MONEY—WIFE NOT REQUIRED TO SCHEDULE.**
The scheduling act of January 11, 1851, did not require the wife to schedule her money kept in her own possession; and the recording of a mortgage to her was a sufficient scheduling of the same under the act of December 31, 1860.

4. **MORTGAGE—FAILURE TO RECORD NOT PER SE FRAUDULENT.**
The fact that a mortgage, executed by the husband to the wife, was not recorded for 18 months, and until after debts had been contracted by the husband, does not of itself render it void.

5. **UNRECORDED MORTGAGE—WHEN NOT VOID UNDER BANKRUPT ACT.**
A mortgage executed more than six months before the commencement of proceedings in bankruptcy, and otherwise valid, is not void under the bankrupt act simply because it was recorded less than four months before the commencement of such proceedings, and after the mortgagor had become insolvent.

In Equity.

The complainant, as assignee in bankruptcy of F. W. Hezekiah, filed his bill in equity against the defendant, Agnes Hezekiah, wife of the bankrupt, praying that a mortgage on certain real estate, executed by the bankrupt to his wife, might be declared fraudulent and void. The facts of the case are admitted, and are as follows:

(1) That on the ninth day of October, 1871, the defendant, then the wife of the bankrupt, had the sum of $2,700, which was her own separate money, bequeathed to her by Dr. Fiddes, a relative of hers, then lately deceased at Kingston, Jamaica; (2) that she loaned said sum of money to her husband on the tenth day of October, 1871, and on the same day her husband, to secure said loan, executed to her the mortgage deed in question; (3) that she gave the mortgage to her husband immediately after its execution, in order that it might be recorded, and that anything else might be done in the premises which might be necessary, and that she supposed it had been recorded in reasonable time, and never knew the delay which occurred in filing it for record until it had actually been filed; (4) that her husband was not insolvent when the mortgage was signed and delivered, but became so prior to the time it was filed for record; (5) that the mortgage was filed for record on the sixth day of June, 1873, and her husband was adjudged a bankrupt on proceedings commenced on the first day of July, 1873; (6) that she filed no schedule in

the recorder's office of the county, claiming said money or mortgage as her separate property.

. *M. W. Benjamin,* for plaintiff.

*U. M. Rose,* for defendant.

CALDWELL, J. Courts of equity uphold and enforce contracts between husband and wife, concerning her separate property. "The wife may become a creditor of her husband by acts and contracts during coverture, and her rights as such will be enforced against him and his representatives." Story, Eq. Jur. § 1373; Story, Eq. Pl. § 62. "Courts of equity regard husband and wife as distinct persons, and allow them to contract with each other as though they were unmarried." *Woodworth* v. *Sweet,* 44 Barb. 268. The husband may allow the wife to retain her separate estate; and if he borrows her money, equity will enforce payment of the loan. *Woodworth* v. *Sweet,* 51 N. Y. 8. The maxim that equity follows the law,—a maxim which, if followed literally, as Mr. Austin well observes, would leave nothing for the courts of equity to perform,—never had any application in those courts in determining and protecting the separate property rights of the wife. The protection of the estate of the wife from the operation of the harsh rule of the common law has been a recognized head of equity jurisprudence from the earliest times. In that forum the wife has always been regarded as a favored suitor when invoking its aid to enforce the just obligations of her husband, and for the protection of her separate estate. The husband may be a trustee for the wife, and will be compelled in equity to account for any money or property belonging to her which he has received. *Walker* v. *Walker,* 9 Wall. 743. And where a husband would be considered a trustee for his wife, his assignee in bankruptcy will be held a trustee in like manner. Deacon, Bankr. 501; Shelf. Bankr. 388.

. The wife of a bankrupt has in equity a right in all cases to an adequate provision out of her own property, and when such property cannot be got at by the assignee without the intervention of a court of equity, the court will compel him to make a competent settlement upon her. Deacon, Bankr. 501; Shelf. Bankr. 388. And the assignee in this case having invoked the aid of a court of equity to set aside a conveyance made by the husband to secure the separate money of the wife, if the conveyance should for any reason prove to be ineffectual, the court would compel the assignee to make settlement of the whole or part of the mortgage debt upon the wife, according to her condition and circumstances. Bisp. Eq. § 109 *et seq.; Davis* v. *Newton,* 6 Metc. 537; 2 Perry, Trusts, §§ 629, 639; *Beeman* v. *Cowser,* 22 Ark. 429.

Where, as in this case, the husband engages, at the time he receives the separate money of the wife, to repay it, equity will not only enforce such contract against him, but as well against his representatives, including his assignee in bankruptcy. *Re Blandin,* 1 Low. Dec. 543; S. C. 5 N. B. R. 39; *In re Bigelow,* 2 N. B. R. (quarto,)

170; *In re Jones*, 14 N. B. R. 125; *Jaycox* v. *Caldwell*, 51 N. Y. 395; *Taggard* v. *Talcott*, 2 Edw. Ch. 628; *Marsh* v. *Marsh*, 43 Ala. 677; *Logan* v. *Hall*, 19 Iowa, 491.

The bankrupt court is invested with an equitable as well as legal jurisdiction, in all matters pertaining to the administration of the bankrupt's estate; and when the wife has loaned her separate money to her husband, or he has otherwise become legally or equitably indebted to her, she may prove for such debt against his estate. *Re Blandin*, 1 Low. Dec. 543; *In re Bigelow*, 2 N. B. R. 170; Hil. Bankr. p. 288, § 22. And in some of the states the wife may now sue her husband at law for her statutory separate money and property, (*Jones* v. *Jones*, 19 Iowa, 236; *Logan* v. *Hall*, Id. 497; *Wilkins* v. *Miller*, 9 Ind. 100; *Scott* v. *Scott*, 13 Ind. 225;) and may enter into partnership with him. *In re Kinkead*, 3 Biss. 405, and note.

Section 6 of article 12 of the constitution of 1868 recognized the absolute right of the wife to retain as her separate property all real and personal property acquired by her either before or after marriage. The last clause of the section declares that "laws shall be passed providing for the registration of the wife's statutory separate estate, and when so registered" it shall not be liable for the husband's debts. The general assembly passed no law on this subject after the adoption of the constitution of 1868 and prior to the date of this transaction. But by the provisions of section 16 of article 15 of the constitution, chapter 111 of Gould's Digest was continued in force. By the provisions of this chapter, the wife might become "seized and possessed of any real or personal property by bequest, demise, gift, or distribution, in her own right and name, and as her own property." To make this provision effectual against the creditors of her husband, the act required the wife to file a schedule of her separate property in the recorder's office of the county where she lived. Mrs. Hezekiah filed no schedule of the money loaned to her husband, or the mortgage given to secure the same, and it is insisted that this omission is fatal to her rights. The constitution of the state reversed the rule of the common law; coverture no longer invested the husband with the title to his wife's property. The schedule required by the act was intended to give the world notice of her rights, and thus prevent her husband from obtaining a fictitious credit on the faith that he owned the property. If notice were not thus given, her property was liable for the husband's debts; but the husband could take no advantage of a failure to schedule; "he has knowledge of the true ownership, and hence needs no notice." *Jones* v. *Jones*, 19 Iowa, 236.

This act was not intended to abridge the known jurisdiction of courts of equity to make a proper settlement on the wife and enforce her just rights against her husband. Its purpose was to relieve married women from the rigorous rules of the common law, now so universally condemned as to have been superseded, in a greater or less degree, by statute in all the states and territories of the Union, and

in England. As to what shall be considered separate property of the wife, the act goes beyond the rules before adopted in courts of equity, and merely enlarges the field for the operation of those doctrines. *Re Blandin, supra.* But the act requiring the wife to schedule her statutory separate property cannot be construed to extend to her money while kept in her own possession. The husband can derive no fictitious credit from the wife's money when thus kept. It is not, therefore, within the reason of the law. *Beeman* v. *Cowser*, 22 Ark. 429; *German Bank* v. *Himstedt*, 42 Ark. 62.

Assuming, but not deciding, that the mortgage falls within the scheduling act, the record of the mortgage itself was a sufficient scheduling under the act of December 31, 1860, p. 84, and it was recorded before the husband was adjudged a bankrupt. The mortgage was not filed for record for more than 18 months after its execution, and during this time the debts due some of the creditors of the bankrupt were contracted, and the mortgagor became insolvent. It is not suggested that the mortgage was withheld from record for any fraudulent purpose; on the contrary, the admitted fact is that the wife supposed it had been recorded, and the failure to file it for record arose from the negligence of her agent, to whom, on its execution, it was delivered in good faith for that purpose. The fact that a conveyance executed by a husband directly to his wife has not been recorded for a year, and until after the debts are contracted by the husband, does not of itself render such a conveyance void. *Brookbank* v. *Kennard*, 41 Ind. 339.

In discussing the effect of a failure to record a conveyance from the husband to the wife, Mr. Justice HUNT, in *Beecher* v. *Clark*, 10 N. B. R. 385, says: "If Clark and his wife supposed that the only value of record was to prevent the effect of another deed by him, and the wife had confidence that he would make no other conveyance, the omission to record has no significance." And see *Cragin* v. *Carmichael*, 2 Dill. 519. The statute of this state provides that a mortgage "shall be a lien on the mortgaged property from the time the same is filed in the recorder's office for record, and not before." Section 4288, Gantt's Dig. But though not recorded, the mortgage is good between the parties and against the administrators of the mortgagor and his general creditors. *Haskill* v. *Sevier*, 25 Ark. 152. In the absence of fraud it is immaterial what time may have elapsed between the date of its execution and the time it is filed for record. The lien is established and becomes effectual against all the world the instant it is filed, and will prevail over any subsequent conveyance or lien.

But it is urged the mortgage is void under the fourteenth and thirty-fifth sections of the bankrupt act, because, though executed more than six months before the commencement of proceedings in bankruptcy, it was filed for record less than four months before the commencement of such proceedings, and after the mortgagor had be-

come insolvent. This mortgage was taken as security for a loan of money made at the time of its execution, and would have been a valid security under the bankrupt act had the mortgagor then been insolvent to the knowledge of the mortgagee, if the latter (as it is admitted to be the case here) made the loan *bona fide* and without any fraudulent purpose. *Darby's Trustees* v. *Boatman's Sav. Inst.* 1 Dill. 141; *Cook* v. *Tullis,* 18 Wall. 332; *Tiffany* v. *Boatman's Inst.* Id. 376. A fiat of bankruptcy is, in legal effect, an execution in favor of all the bankrupt's creditors. The assignee stands in the position of a judgment creditor, and may assert all the rights, and have the same relief in any given case, that a judgment creditor might. Confessedly, a judgment creditor, whose judgment was subsequent to the recording of defendant's mortgage, could not, on the facts in this case, successfully attack it, nor can the assignee do so unless the mortgage is obnoxious to some provision of the bankrupt act. That a mortgage executed more than six months before the commencement of proceedings in bankruptcy, and otherwise valid, is not void under the bankrupt act simply because it was filed for record less than four months before the commencement of such proceedings, and after the mortgagor had become insolvent, is settled as well as any question can be by the authority of adjudged cases. *In re Wynne,* 4 N. B. R. 5; *In re Dow,* 6 N. B. R. 10; *In re Perrin* v. *Hance,* 7 N. B. R. 283; *Cragin* v. *Carmichael,* 2 Dill. 519; *Gibson* v. *Warden,* 14 Wall. 244.

Let a decree be entered dismissing the bill for want of equity.