FIRST NATIONAL BANK OF HOLDREGE, NEBRASKA, V. JOHN A. JOHNSON, TRUSTEE IN BANKRUPTCY OF THE ESTATE OF NELS ANDERSON ET AL.

FILED APRIL 22, 1903.    No. 12,816.

1. Mortgagee: ATTACHMENT. A mortgagee of chattels does not waive or lose his lien by causing an attachment to be levied upon the mortgaged property.

2. Chattel Mortgage: RECORDING: BANKRUPTCY. A chattel mortgage executed and delivered more than four months prior to bankruptcy of the mortgagor, is not voidable because not recorded until a subsequent date within such period of four months.

3. ———: DEFECTIVE DESCRIPTION. A chattel mortgage which would be invalid as against creditors and purchasers in good faith by reason of defective description of the property mortgaged, may be good as between mortgagor and mortgagee, where the property in fact mortgaged is identified.

4. ———: INDEFINITE DESCRIPTION. Such a case differs from one where no specific chattels are mortgaged, but there is an attempt to mortgage a certain number out of a mass without separating or identifying them.

5. Lien: ARTICLES NOT SEPARATED FROM MASS. No lien upon specific chattels is created in a case of the latter sort until they are separated or identified and it is agreed that the mortgage shall apply to them.

6. Bankruptcy: PREFERENCE. If a chattel mortgage is executed more than four months before bankruptcy, which creates no lien on specific chattels, and afterwards, within the four months, while the mortgagor is insolvent, he separates or identifies certain chattels and agrees that the mortgage shall apply to them, the lien is created then for the first time, and constitutes a preference within the meaning of section 60 of the bankruptcy act.

7. Question for Jury. Evidence examined, and *held* to present a question for the jury whether the specific chattels in controversy were mortgaged in the first instance, or were afterwards agreed upon as the mortgaged property.

ERROR to the district court for Phelps county: ED L. ADAMS, DISTRICT JUDGE.    *Reversed.*

*James I. Rhea, John L. McPheeley, John M. Stewart* and *Thomas C. Munger,* for plaintiff in error.

45

*Hector M. Sinclair* and *William P. Hall, contra.*

POUND, C.

One Anderson, whose trustee in bankruptcy is plaintiff in this case, executed a chattel mortgage to the cashier of the First National Bank of Holdrege, the defendant herein, on June 23, 1900, whereby he mortgaged "76 head of fat steers now in my feed lots, mostly reds, average weight about 1,500 pounds, branded 6 on side." This mortgage was given to secure a note made in renewal of prior indebtedness and for an additional loan of money. Shortly thereafter Anderson, who was hopelessly insolvent, disappeared. The officers of the bank, becoming aware of his absence, went to look at the cattle, and were unable to find any which entirely answered the description. Thereupon they sued out an attachment, which was levied upon sixty-eight fat steers, the property now in controversy. On November 8, following, Anderson's creditors filed a petition to have him adjudged a bankrupt, and an adjudication to that effect followed on February 16, 1901. The bank, after obtaining possession of the cattle levied upon, proceeded to ship them for sale, and applied the proceeds upon its note. The attachment suit was dismissed on December 20, 1900, presumably by reason of the pendency of proceedings in bankruptcy.

A verdict for the plaintiff was directed in the trial court upon the ground that the defendant had lost whatever lien it might have had upon the cattle under its mortgage by causing an attachment to be levied upon them. There is a long line of cases holding that a mortgagee waives or loses his lien by attaching the mortgaged property. *Evans v. Warren,* 122 Mass. 303; *Whitney v. Farrar,* 51 Me. 418; *Libby v. Cushman,* 29 Me. 429; *Haynes v. Sanborn,* 45 N. H. 429; *Dyckman v. Sevatson,* 39 Minn. 132, 39 N. W. 73; *Cox v. Harris,* 64 Ark. 213, 41 S. W. 426; *Dix v. Smith,* 9 Okla. 124, 60 Pac. 303. On the other hand, there is equally

good authority for the contrary view. *Byram v. Stout,* 127 Ind. 195, 26 N. E. 687; *Barchard v. Kohn,* 157 Ill. 579, 41 N. E. 902; *Howard v. Parks,* 1 Tex. Civ. App. 603, 21 S. W. 269. The leading cases on the respective sides of this question are *Evans v. Warren,* and *Byram v. Stout.* In *Evans v. Warren,* the ground of decision was, in substance, that under the laws of Massachusetts the equity of redemption of personal property was not subject to attachment, and hence, when the mortgaged property was attached, there must necessarily be a waiver of the mortgage lien. The court said:

"The liens respectively created by mortgage and by attachment on the same property are essentially different, and can not coexist."

The subsequent cases followed this decision without much independent examination of the subject, and in *Cox v. Harris, supra,* and *Dix v. Smith, supra,* the latest decisions supporting this view, no reference is made to the subsequent cases taking a contrary position, but the rule, as announced in *Evans v. Warren,* is treated as settled. The first to question the universal applicability of the doctrine of *Evans v. Warren* was Mr. Jones, in his work on Chattel Mortgages. Jones, Chattel Mortgages, sec. 565. He suggested that where the statute made a chattel mortgage a mere lien upon the property without creating any title, it was probable that an attachment of the mortgaged property would not amount to a waiver of the lien, but would be regarded merely as a cumulative remedy. This view was adopted in *Byram v. Stout, supra,* where the question was re-examined somewhat thoroughly. In *Barchard v. Kohn* the ground was gone over once more, and *Byram v. Stout* was followed. To our minds, the reasoning of these cases is much more satisfactory, and more in accordance with the law in this state as to the nature of a chattel mortgage. Mortgaged chattels in this state are undoubtedly liable to execution or attachment, subject to the mortgage. There is no reason why the mortgagee himself may not proceed

against the property by either of these writs, the same as
any other person. If he has other debts which he wishes
to enforce against the surplus, or if the security of the
mortgage is limited to a portion of his claim, and he
desires to enforce such claim for the deficiency against any
surplus that may accrue, or if, as in the case at bar, he is
in doubt whether the property which he finds in the pos-
session of the mortgagor is the property mortgaged or
some other property, and is desirous to protect his claim
by prompt proceedings, we see no ground for thinking that
he has done anything inconsistent with the claim of lien
under his mortgage. It is not a case of asserting title in
himself in one proceeding and title in the mortgagee in
another. Both the mortgage and the attachment recog-
nize a title in the mortgagee. We are therefore of opinion
that a mortgagee of chattels does not waive or lose his
lien by causing an attachment to be levied upon the mort-
gaged property.

It is contended, however, that the cattle seized and sold
by the bank are not the cattle covered by its mortgage.
There is no controversy as to the cattle seized and sold.
They are described in the petition and admitted in the
answer to be those upon which the attachment was levied,
described in the return of the sheriff as "68 head of fat
steers, 4 black and 64 red and white spotted, of various
brands." This is obviously a different description in some
important particulars from that contained in the mort-
gage, and the question arises whether the bank can justify
under the mortgage in view of this discrepancy. If there
was merely a defect or error of description so that the
mortgage created a lien on these specific cattle as between
the parties, and they were afterward identified by the par-
ties as being the cattle actually mortgaged at the time the
instrument was executed, the bank is entitled to judgment;
if, on the other hand, these cattle are not the cattle which
were mortgaged, or if the mortgage did not create a lien
upon them when executed, but they were afterward
agreed upon as the subject of the lien, and a lien upon

them was created in this manner, an entirely different question is presented. The mortgage was executed more than four months prior to bankruptcy, and the fact that it was not recorded until subsequently, and within the period of four months, does not render it voidable. *Stewart v. Hopkins,* 30 Ohio St. 502; *Clark v. Hezekiah,* 24 Fed. 663; *Folsom v. Clemence,* 111 Mass. 273; *Asbury Park Building & Loan Ass'n v. Shepherd,* 50 Atl. (N. J. Eq.) 65; *In re Wright,* 96 Fed. 187.

A chattel mortgage which would be invalid as against creditors and purchasers in good faith for defective description of the property mortgaged may be good as between mortgagor and mortgagee where the property in fact mortgaged is identified. *Leighton v. Stuart,* 19 Neb. 546. In the case at bar the bank seized certain cattle, which it now asserts were the cattle actually mortgaged, and it offered to prove that Anderson afterwards acquiesced in the sale of these cattle under the mortgage, and treated them as such. If this was nothing more than an identification of cattle which had always been subject to the mortgage, we think such evidence admissible, and that on proof of this fact the bank would have sustained its defense. Such a case differs, however, from one where no specific chattels are mortgaged but there is an attempt to mortgage a certain number out of a mass without separating or identifying them. No lien upon any specific chattels is created in a case of the latter sort until they are separated or identified, and it is agreed that the mortgage shall apply to them. *Price v. McComas,* 21 Neb. 195; Jones, Chattel Mortgages, secs. 56, 60. If the cattle seized and sold were, as there is much in the evidence to suggest, merely part of a larger number of cattle in the feed lots of the mortgagor at the time the instrument was executed, and were not at that time in any way separated or identified, but afterwards and within four months of bankruptcy, and while the mortgagor was insolvent, they were separated or identified through the seizure made by the bank, and the mortgagor acquiesced in such separation

and identification, and expressly or by acquiescence agreed that the mortgage should apply to them, it is obvious that the lien was created then for the first time, and that there was a preference within the meaning of section 60 of the bankruptcy act. *In re Ronk,* 111 Fed. 154. Such would be the case even more clearly, if there was a substitution of the cattle now in controversy for others contemplated by the instrument as executed. In either case the bank has not justified, and its defense under the mortgage must fail. From an examination of the record we are unable to say which view should be taken. The evidence is meager on this point, and no little reliance must be placed upon circumstances. Anderson's testimony is in the form of a deposition, in which he speaks of the cattle mortgaged as if a specific lot of cattle had been intended from the first. But this is rather an inference from all of his testimony than anything which is directly testified to. On the other hand, he speaks of them as having been on his farm, "mixed up with a lot of other cattle," and the evidence shows that there were a number of steers attached which are quite as much within the description in the mortgage as at least some of those taken and sold. The bank seems to have been unable from the mortgage, or from such information as it could obtain at the time it brought the attachment suit, to identify any cattle as subject to its mortgage. There is circumstantial evidence on each side. Under these circumstances we think the question was one for the jury, and that the direction of a verdict can not be upheld.

It is suggested that at the time the bank sold the cattle an attachment suit was pending, so that it had no right to foreclose by sale, and that the sale had was not authorized by the mortgage, in that it was private, and out of the state. But it appears that the value of the cattle was less than the amount due upon the note secured by the mortgage, and hence, even if the bank were liable for conversion by reason of improper foreclosure sale, so long as it would be liable only for the difference between the

amount of the debt and the value of the property, plaintiff has nothing to complain of.

We therefore recommend that the judgment be reversed, and the cause remanded for a new trial.

BARNES, C., concurs; OLDHAM, C., did not sit.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed, and the cause is remanded for a new trial.

REVERSED AND REMANDED.