## In re HOFFMAN.

### (District Court, D. New Jersey. October 7, 1912.)

1. WITNESSES (§ 53*)—HUSBAND AND WIFE—COMMUNICATIONS—STATUTES.

   2 Comp. St. N. J. 1910, p. 2222, § 5, provides that, in any trial or inquiry in any suit, action, or proceeding in any court or before any person or committee having authority to examine witnesses, the husband or wife of any person interested therein as a party or otherwise shall be competent and compellable to give evidence, the same as other witnesses, on behalf of any party to such suit, action, or proceeding. *Held*, that where a husband, after wrongfully pledging his wife's bonds for his debt, in order to satisfy her offered to give to her other bonds belonging to him of the same value, she was competent, in bankruptcy proceedings against her husband, to testify as to the conversation had between them at the time of the delivery of such bonds, though at the time of the conversation they were subject to a lien for a loan to the husband, which was not discharged until within four months prior to the institution of bankruptcy proceedings.

   [Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 137–141; Dec. Dig. § 53.*]

2. COURTS (§ 349*)—FEDERAL COURTS—COMPETENCY OF WITNESSES.

   The competency of witnesses in civil proceedings in the federal courts is determined by the laws of the state in which the court is held, under the Conformity Act (Rev. St. § 858, as amended by Act June 29, 1906, c. 3608, 34 Stat. 618 [U. S. Comp. St. Supp. 1909, p. 242]).

   [Ed. Note.—For other cases, see Courts, Cent. Dig. § 925; Dec. Dig. § 349.*

   Competency of witnesses in federal courts following state practice, see notes to O'Connell v. Reed, 5 C. C. A. 602; Hinchman v. Parlin & Orendorff Co., 21 C. C. A. 278.]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**3.** HUSBAND AND WIFE (§ 45*)—CONTRACTS—MARRIED WOMAN—PROPERTY RIGHTS.

3 Comp. St. N. J. 1910, p. 3222, gives to a wife the ownership and control of her personal property as if she were sole, and section 14 declares that nothing therein contained shall enable a husband or wife to contract with or to sue each other, except as previously prescribed. *Held*, that section 14 did not prohibit an exchange of bonds between husband and wife to make good the husband's wrongful pledge of bonds belonging to his wife, nor did it limit the jurisdiction of a court of equity to take cognizance thereof and enforce the wife's right to the bonds acquired by her by virtue of the exchange.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 229–231; Dec. Dig. § 45.*]

**4.** HUSBAND AND WIFE (§ 205*)—CONTRACTS INTER SE—ENFORCEMENT.

Though courts of law, in the absence of statutory authority, will not enforce contracts between husband and wife, equity will aid the wife to recover her separate property, which has come into the hands of her husband, and has been retained by him against her consent.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 744, 749–755; Dec. Dig. § 205.*]

**5.** BANKRUPTCY (§ 210*)—WIFE OF BANKRUPT—RIGHT TO PROPERTY—ENFORCEMENT.

Courts of bankruptcy are courts of equity, and will aid the bankrupt's wife to recover her separate property, which had come into the hands of her husband, and had been retained by him against her consent, as against the husband's trustee in bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 321–323; Dec. Dig. § 210.*]

In Bankruptcy. In the matter of bankruptcy proceedings of Nicholas W. Hoffman. On review of referee's order adjudging that the title of certain bonds in the possession of the bankrupt's wife was in the trustee, and directing her to turn them over to him. Reversed and remanded.

James L. Griggs, of Somerville, N. J., for Anna C. Hoffman.
George H. Large, of Flemington, N. J., for trustee.

RELLSTAB, District Judge. Nicholas W. Hoffman was adjudicated a bankrupt on July 14, 1911. On the petition of the trustee, Anna C. Hoffman, the wife of the bankrupt, was ordered to turn over to the trustee two certain bonds, issued by the Dover Gas Company, aggregating in value $2,000, which the bankrupt had delivered to his wife within four months of the filing of the petition in bankruptcy. The primary question raised on the record is of the admissibility of evidence; and if the rejection of the testimony sought to be introduced, presently referred to, was erroneous, no other question can be considered, as the testimony rejected vitally affects the title to the bonds in question.

[1] The testimony discloses that in the year 1910 the bankrupt was the owner of such Dover Gas Company bonds, and that his wife was the owner of two certain bonds, designated "Middlesex bonds," aggregating the like sum of $2,000; that both these classes of bonds

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

were coupon bonds, transferable by delivery; that until the pledging of said bonds, presently to be mentioned, both of said sets of bonds were kept in a box under the control of the bankrupt, which he had deposited with the First National Bank of Clinton, N. J., for safe-keeping; that some time previous to December, 1910, the bankrupt delivered his Dover bonds to such bank as collateral security for the payment of a loan made to him of $800; that subsequent to the making of such pledge he borrowed from such bank $2,000, and delivered to it his wife's Middlesex bonds as collateral security; that such latter pledge was made without his wife's knowledge or authority, and she derived no benefit from the loans made thereon; that the first the wife knew of the pledge of her bonds was in December, 1910; that on May 29, 1911, the bankrupt paid off such loan of $800, and had his bonds (Dover Gas) returned to him, and that he immediately turned them over to his wife in lieu of her bonds (Middlesex); that at the time in December, 1910, when the wife learned that her bonds were held by such bank as collateral security for her husband's debt, she insisted that they be returned to her; and that her husband then offered to give her the Dover bonds for her Middlesex bonds. There was other conversation at that time and subsequent thereto regarding such bonds; but the referee, on objection of the trustee, refused to allow either the bankrupt or his wife to testify to such further conversation, holding that at that time the bank had the title, as well as the possession, of the bonds, and that they were not subject to the control of the husband, and that, as he did not regain either title or possession until within four months of the institution of bankruptcy proceedings against him, such evidence was incompetent.

In this the referee erred. The title to the Dover bonds was still in the husband, and transferable by him, subject only to the bank's lien. Mitchell v. Roberts (C. C.) 17 Fed. 776; Clark v. Equitable L. Ins. Co. (C. C.) 133 Fed. 816; 31 Cyc. p. 808, c. 3. Having the right to transfer, and being under a legal obligation to return his wife's bonds wrongfully pledged by him, or to render an equivalent thereof, both he and his wife should have been permitted to testify to what took place between them at the time of such offer, that the court might know whether the title to such bonds passed on such occasion. The idea that, because these persons bore the relation of husband and wife, they were incompetent to testify to such transaction is not tenable. Section 5 of the New Jersey act concerning evidence (Rev. 1900, 2 Comp. Stat. N. J. p. 2222) removes the common-law disability of husband and wife to testify in such matters. This section in terms provides that:

"In any trial or inquiry in any suit, action or proceeding in any court, or before any person or committee having by law or consent of parties authority to examine witnesses or hear evidence, the husband or wife of any person interested therein as a party or otherwise shall be competent and compellable to give evidence the same as other witnesses, on behalf of any party to such suit, action or proceeding."

[2] The competency of witnesses in civil proceedings in the United States courts is determined by the laws of the state in which the court

is held. R. S. § 858, as amended by Act June 29, 1906, 34 Stat. 618, Fed. Stat. Ann. Supp. 1909, p. 708, Comp. St. Supp. 1909, p. 242

[3] The New Jersey act in relation to the property of married women (3 Comp. Stat. N. J. p. 3222) gives the wife the ownership and control over her personal property as absolute as if she were a feme sole, and the concluding clause of section 14 of the act, viz., "Nor shall anything herein enable husband or wife to contract with or to sue each other except as heretofore," does not prohibit transactions like the one under consideration, nor limit the jurisdiction of a court of equity to take cognizance thereof.

[4] Although courts of law, in the absence of statutory authority, will not enforce contracts between husband and wife, the instances are many where courts of equity, following the doctrine of the civil rather than the common law, will do so. See 21 Cyc. p. 1272. That courts of equity will aid the wife to recover her separate estate, which has come into the hands of her husband and has been retained by him against her consent, is entirely settled. Story, Eq. Juris. §§ 1368–1372; Garwood v. Garwood, 56 N. J. Eq. 265, 38 Atl. 954.

[5] Courts of bankruptcy are courts of equity, and such recovery will be enforced against the trustee administering the husband's estate in bankruptcy. Clark v. Hezekiah (D. C.) 24 Fed. 663.

The rejected testimony being competent, the order under review is reversed, and the proceedings are remanded, with instructions to receive the testimony of the bankrupt and wife in relation to the transfer of title to such bonds.