MUTUAL SURETY COMPANY OF IOWA, Appellant, v. PERCY BAILEY, Appellee.

No. 45902.

MAY 12, 1942.

Blake Willis and Hallagan, Fountain, Stewart & Cless, for appellant.

George B. Aden, for appellee.

MITCHELL, J.— While the facts in this case are somewhat complicated, most of them have been stipulated. Ray Roberts, who was the owner of a 1939 Chevrolet ¾-ton pickup truck, sold same to Elbert Ansberry of Guthrie county, Iowa, and on January 8, 1940, Ansberry gave his promissory note, secured by a chattel mortgage on said truck, to H. I. Steltzer, doing business as the Steltzer Finance Company, said note being in the amount of $520. The chattel mortgage was filed of record with the county recorder of Guthrie county on the 10th day of January 1940. The truck had been registered in the name of Ray Roberts and the certificate of registration was never changed. Sometime prior to March 11, 1940, Ansberry sold the pickup truck and delivered possession of it to the Fleck Auto Exchange of Des Moines, Iowa, and about that same date the Fleck Auto Exchange sold and delivered possession of the pickup truck to Joe Bordenaro of Des Moines, Iowa, under a conditional sale contract which was assigned to the Chase Investment Company by the Fleck Auto Exchange on or about the 14th day of March 1940. On March 20, 1940, H.I. Steltzer, doing business as the Steltzer Finance Company, filed his petition for foreclosure of his chattel mortgage and asked for the issuance of a writ of specific attachment. This suit was instituted against Elbert Ansberry alone. On March 20, 1940, the district court of Dallas

county, Iowa, where the suit was instituted, ordered that a specific attachment issue against the truck; a writ of specific attachment issued to the sheriff of Polk county, Iowa, and a levy was made on the truck by the said sheriff thereunder, the car being found in the possession of Joe Bordenaro at Des Moines, Iowa, who, on March 26, 1940, filed a sworn notice of ownership with the sheriff of Polk county and furnished a delivery bond signed by the Mutual Surety Company of Iowa, which is the plaintiff in this cause of action.

Upon the filing of the delivery bond by Bordenaro with the sheriff of Polk county, possession of the pickup truck which is in controversy in this case was restored to Joe Bordenaro by the sheriff of Polk county. Shortly after the truck was restored to Joe Bordenaro it again became possessed by the Fleck Auto Exchange of Des Moines, Iowa; the exact manner in which the Fleck Auto Exchange secured this truck the record does not clearly show. On the 28th day of August 1940, Percy Bailey purchased from the Fleck Auto Exchange in Des Moines, the truck in controversy for the sum of $317.73 and by trading in an old Model A pickup which the evidence shows was worth approximately $50. Fleck hired a man to drive it to Webster City, where it was delivered to Bailey. The car was not licensed at the time it was delivered and Fleck told Bailey that he would get the license and send it to him. Bailey had no knowledge that there was any mortgage against the said truck or that anyone else claimed any interest in same. Fleck failed to get the license for Bailey, and in a week or 10 days he wrote to Fleck, who replied that the license and transfer would be sent to him immediately. He never did receive the license and transfer. He went to Des Moines, where Bailey for the first time found out about the two mortgages against the truck and that there was a suit pending to foreclose the lien in Dallas county. Steltzer, after the truck was released by the sheriff of Polk county upon the filing by Bordenaro of the delivery bond signed by the Mutual Surety Company, amended his petition in Dallas county by joining Ray Roberts, Joe Bordenaro, and the Chase Investment Company as parties-defendant, and on the issues joined the case of Steltzer v. Ansberry proceeded to trial before the Honorable Judge Cooper, resulting in a decree under date of September 26, 1940, in favor of H. I. Stelt-

zer, doing business as the Steltzer Finance Company, rendering judgment against Elbert Ansberry in the amount of $520 plus expenses and costs. The decree in the Steltzer case ordered the defendant Joe Bordenaro to restore possession of said truck to the sheriff of Polk county in as good condition as it was when the action was commenced, and it further provided that upon the return of the said motor vehicle to the sheriff of Polk county by the defendant Joe Bordenaro, in case said motor vehicle was returned, then the plaintiff would be entitled to a special execution for the sale of same in order to satisfy said judgment rendered against the defendant Elbert Ansberry.

Bordenaro did not deliver the car to the sheriff of Polk county within 20 days following the date of the decree and the Mutual Surety Company of Iowa, plaintiff in the present action and the surety on the delivery bond executed by Bordenaro, paid to Steltzer the amount of $520, plus all costs and attorney fees, which was the exact amount which was due Steltzer from Ansberry under the judgment and decree of court entered in the case of Steltzer v. Ansberry. The Mutual Surety Company took what is referred to as an assignment of the Steltzer decree. It is the claim of the Mutual Surety Company that it made demand on Percy Bailey for the delivery of the truck, and, the truck not being delivered, it commenced this action in replevin against Bailey for the possession of the truck. The case was tried to the court, the parties having waived a jury, and at the conclusion of the plaintiff's case and again at the conclusion of the defendant's evidence, the defendant made a motion for a directed verdict. The latter motion for directed verdict was sustained and the plaintiff has appealed to this court.

The amount involved in this case is not large, but many interesting and difficult legal questions are raised. We do not find it necessary to pass upon all of them. The Mutual Surety Company commenced this action in replevin to secure possession of the truck. Before the appellant is entitled to recover in replevin, it must prove that it was entitled to the immediate possession of the truck. The only rights that it possesses it secured under the assignment of the decree and judgment in the case of Steltzer v. Ansberry et al. In the case of Steltzer v. Ansberry, the plaintiff did not seek to foreclose the chattel mortgage which

it held on the truck. For reasons not appearing in the record, it commenced an action in which it sought judgment against Ansberry and also prayed for a specific attachment against the property described in the chattel mortgage, or the conditional sale contract, marked Exhibit B, which was attached to the petition. The pickup truck was attached and was released upon the delivery bond signed by this appellant. The decree in the Steltzer case does not foreclose the chattel mortgage but first enters judgment against Ansberry for the amount of the note and costs, then holds that the claim or lien under the chattel mortgage is superior to the rights of any of the defendants. We quote the remainder of the decree:

"It Is Further Ordered, Adjudged and Decreed that the plaintiff is entitled to the immediate possession of said motor vehicle and was entitled to the possession thereof at the time of the issuance of the Writ of Specific Attachment in said cause of action.

"It Is Further Ordered, Adjudged and Decreed that the fendant Joe Bordenaro be and he is hereby ordered and directed to return to the Sheriff of Polk County, Iowa, the motor vehicle described hereinabove, as in as good condition as it was when this action was commenced, and to pay the costs of this action in the sum of $43.15, and attorney fees for plaintiff's attorney, in the sum of $35.40, and judgment is hereby rendered against the Defendant Joe Bordenaro, for all of said amounts.

"It Is Further Ordered, Adjudged and Decreed that upon the return of said motor vehicle to the Sheriff of Polk County, Iowa, by the defendant Joe Bordenaro, in case said motor vehicle is returned, then this plaintiff shall be entitled to special execution for the sale of same, in order to satisfy judgment herein rendered against the Defendant Elbert Ansberry."

It is true that the court says in this decree that "the plaintiff is entitled to the immediate possession of said motor vehicle and was entitled to the possession thereof at the time of the issuance of the Writ of Specific Attachment * * *."

Of course, there is no question but that the plaintiff in the Steltzer suit was entitled to the possession of the car at the time the writ of specific attachment was issued, but we are of the

opinion that the statement that the plaintiff in that case was entitled to the immediate possession of said motor vehicle must be taken into consideration with what the court held in the next two paragraphs of the decree. In the next two paragraphs the court specifically ordered that the car was to be returned by Joe Bordenaro to the sheriff of Polk county, Iowa, and that upon the return of said motor vehicle to the sheriff of Polk county, Iowa, a special execution was to be issued for the sale of same to satisfy the judgment rendered. Certainly, under this decree the only right that the assignee of the Steltzer judgment had, to wit, the appellant in this case, was to a special execution for the sale of the pickup truck in order to satisfy the judgment assigned to it. It is the contention of the appellant that, in addition to the rights it had under the decree in the Steltzer case which was assigned to it, the chattel mortgage still remained, and under the lien of the chattel mortgage the appellant was entitled to the possession of the truck.

It must be kept in mind that in this case not only did the appellant's assignor sue out a specific attachment but he secured a judgment and decree foreclosing the specific attachment and not the chattel mortgage. The rights that Steltzer was claiming were under the specific attachment and not under the chattel mortgage. Appellant calls our attention to the case of Stein v. McAuley, 147 Iowa 630, 634, 125 N. W. 336, 337, 27 L. R. A., N. S., 692, 140 Am. St. Rep. 332, but the facts in that case and the case at bar are entirely different. In the Stein case the attachment was dismissed. It was never reduced to judgment, while in the case at bar judgment and decree was taken under the attachment. Judge Deemer in the cited case said, we quote:

"We do not think there was a waiver of the mortgage lien, especially in view of the fact that the attachment was dismissed and never went to trial. Had there been a sale of the property under execution growing out of the attachment proceedings, we would have a very different proposition."

In the case at bar, the attachment was not released, but instead, judgment and decree was taken in the attachment suit. The parties saw fit to make no claim under the chattel mortgage but relied entirely upon the lien of the specific attachment. They foreclosed the specific attachment and secured a judgment

and decree. By proceeding to foreclose the lien of the specific attachment, they waived all rights that they had under the chattel mortgage lien, for certainly a party who has two liens upon the same property and proceeds to and does foreclose one of the liens cannot afterward say, "We still retain the other lien which we claimed no rights under at the time the judgment and decree was entered." Steltzer waived whatever rights he had under the chattel mortgage and relied entirely upon the specific attachment and the bond which he had as security for the return of the truck.

The appellant, as the assignee of the Steltzer judgment, has only the rights that Steltzer had. The appellant also calls our attention to the case of First Nat. Bk. v. Johnson, 68 Neb. 641, 644, 94 N. W. 837, 838. The opinion was by Roscoe Pound, then acting as one of the commissioners for the Nebraska Supreme Court and subsequently Dean of the Harvard Law School. An examination of that opinion shows, however, that the attachment was released and not foreclosed and all that the Supreme Court of Nebraska holds is, we quote:

"We are therefore of opinion that a mortgagee of chattels does not waive or lose his lien by causing an attachment to be levied upon the mortgaged property."

We have no fault to find with the quoted statement, but it does not apply to the case at bar because the facts are different. Here we have not only the levying of an attachment but the foreclosing of a chattel mortgage. We can come to no other conclusion than that by proceeding to secure a judgment and decree under the specific attachment the rights under the chattel mortgage were waived, and that, as the appellant secured only the rights by assignment of the judgment and decree in the Steltzer case it had no right to the immediate possession of the truck, and, not being entitled to the immediate possession, it could not maintain the replevin action which it brought. The lower court was right in so holding, and it necessarily follows that the judgment and decree must be, and it is, affirmed.—Affirmed.

SAGER and OLIVER, JJ., concur.

BLISS, C. J., and HALE and GARFIELD, JJ., specially concur.

MILLER, J., dissents.

BLISS, C. J. (specially concurring)—I concur in the result reached in the majority opinion. I do not agree with the holding therein that the plaintiff is entitled to seize and sell the truck upon special execution issued on the Steltzer judgment assigned to plaintiff.

In his petition Steltzer alleged that Ansberry had disposed of the truck, and that he felt insecure, and that unless the truck was specially attached he would lose its security; and that he was entitled to its immediate possession, in order that he might sell it to pay the amount due, as provided in the mortgage. He prayed judgment against Ansberry for the amount due, and that he be authorized to sell the truck to satisfy the judgment.

Plaintiff amended his petition, at a time not shown, by alleging the claimed interest of Ray Roberts, who owned the truck prior to January 8, 1940, and in whose name the truck was registered, and Bordenaro, and Chase Investment Company. He prayed that their rights be adjudged inferior to his.

Fleck, in a manner and at a time not shown, again became possessed of the truck, and on August 28, 1940, Bailey, the defendant in the action before us, without any knowledge of the Steltzer mortgage or foreclosure, purchased the truck from Fleck and paid value therefor.

On September 26, 1940, Judge Cooper rendered judgment against Ansberry on the note in the sum of $520, decreed the lien of the mortgage prior and superior to the rights of all of the defendants, decreed that Steltzer was entitled to the possession of the truck and was entitled to it when the writ of attachment was issued, ordered Bordenaro, under the terms of his delivery bond, to deliver the truck to the sheriff, and decreed that when this was done the plaintiff was entitled to a special execution for its sale to satisfy the judgment. The decree did not confirm the attachment.

Bordenaro did not deliver the truck and no special execution was ever issued.

Fleck had promised to send Bailey the registration card for the truck but had never done so. He came from his home in Webster City to Des Moines on October 17, 1940, and learned for the first time of the Steltzer mortgage and of the action in Dallas county. He learned of the two mortgages from Roberts.

He talked with one of the men in Steltzer's office who told him that Steltzer was looking to the bonding company, and that Bailey had nothing to worry about, and that he (Steltzer) did not want the truck. The next afternoon, October 18, 1940, Blake Willis, the attorney for Steltzer in the Dallas county suit and one of the attorneys for the plaintiff in the action before us, telephoned to Bailey and told him that there was going to be a hearing at Adel in the Steltzer suit the next day, and asked Bailey to be present. Bailey called his attorney from Webster City and the next day, October 19, 1940, they attended the hearing but took no part therein. Chase Investment Company was asking for a new trial. At the hearing Bailey talked with Willis and Steltzer in the presence of both of them. Bailey testified: "They said we were all right on the truck; that they didn't want the truck as they looked forward to the bonding company to make it right with them." Steltzer testified that there was something said of that kind—that he might have said he depended on the bond —that he did not remember now any conversation as to the truck; that he probably did say he would rather have the money than the truck. He later testified definitely that: "I wanted the money and never did want a truck." All of this talk was before Steltzer assigned the judgment to the Mutual Surety Company.

Lundy, the president of the Mutual Surety Company, testified that his company learned, after the Steltzer judgment and before it paid the judgment and received the assignment thereof, that Bailey had possession of this truck. It paid the exact amount due on the judgment and took an assignment of it, without attempting to ascertain what rights Bailey had or claimed to have. On December 10, 1940, Mr. Willis, the attorney for the Mutual Surety Company, wrote to Bailey. The record does not disclose what the communication was. A week before, on December 3, 1940, Steltzer executed to it an assignment of "all my right, title and interest in and to the judgment and decree * * * against the defendant, Elbert Ansberry, and the defendant Joe Bordenaro, reserving unto the said Mutual Surety Company of Iowa, all rights of recovery of any type or nature which I *may* have under and by virtue of said Decree and the lien established thereunto to" the truck.

The decree found that the lien of the plaintiff's chattel mortgage was superior to the rights of the defendants therein, but this is not an adjudication of Bailey's rights in and to the truck, because he was not a defendant. Furthermore, the important matter is not what rights Steltzer had when the judgment was rendered on September 26, 1940, but what his rights were on December 3, 1940. Bailey was making an effort to find out what his rights were on October 17, 18, and 19, 1940. He saw Roberts, Chase, Steltzer, and Steltzer's lawyer, and tried to see Fleck. He sent for his lawyer. Steltzer's lawyer invited him to Adel. Steltzer's office man, on the 17th, told him that he was all right, that they did not want the truck, and that they were looking to the bond. Steltzer and his lawyer told him the same thing on the 19th. Having this promise and assurance, he made no move in the litigation. If he had any thought of trying to settle with Fleck or Chase, he naturally made no attempt to. What Steltzer said to Bailey was the equivalent of, "I release any and all liens I have on your truck." Certainly if Bailey had thereafter made a bona fide sale of the truck such sale would have been free from any lien under the judgment. Steltzer would have been estopped to assert otherwise. Bailey did not make any such sale. While I believe that under the record here Steltzer would be estopped from asserting any lien or claim upon the truck, Bailey need not rest his rights on an estoppel. Steltzer had the right, if he wished, to waive any lien he may have had against the truck, with respect to Bailey. He could release any lien he had on the truck in favor of Bailey. Such waiver or release required no consideration. Neither do they require the support of prejudice as against Bailey. Steltzer could have executed a written release with all of the customary formalities and have given it to Bailey. Nobody could dispute his right to do so. It would have been a binding release. What he in fact did was just as effective. As said in Livingston v. Stevens, 122 Iowa 62, 68, 94 N. W. 925, neither waiver of lien nor estoppel requires written evidence nor need be supported by consideration. The principle has often been repeated by this court.

It may be conceded that the Mutual Surety Company became entitled by assignment and subrogation to whatever rights Steltzer had under the judgment, subject, of course, to any limi-

tation, reduction, or impairment thereof by reason of his waiver or release to Bailey. The fact that such waiver or release of any lien in favor of Bailey may have impaired the appellant's rights of subrogation, and might have furnished a defense to any liability under the bond to Steltzer, cannot avail the appellant now. It had notice of Bailey's possession of the truck. It knew he claimed some rights to it. Its attorney knew that Steltzer had told Bailey, in effect, to go hence with the truck, that he did not want it, that he was depending on the bond; but with this knowledge, and in spite of it, it paid Steltzer.

The appellant's rights under the assignment as a purchaser or under its rights of subrogation as a surety can rise no higher nor be more inclusive than those of Steltzer.

For the reasons stated, Steltzer could not have replevied the truck in this action, and, therefore, the appellant cannot.

It is my judgment, therefore, that the Mutual Surety Company of Iowa has no rights as against the truck and cannot recover it by writ of replevin, special execution, or other process.

HALE and GARFIELD, JJ., join in this special concurrence.

MILLER, J. (dissenting)—I am unable to agree with the opinion of the majority herein and respectfully dissent.

The majority opinion states:

"In the case of Steltzer v. Ansberry, the plaintiff did not seek to foreclose the chattel mortgage which it held on the truck. * * * The decree in the Steltzer case does not foreclose the chattel mortgage but first enters judgment against Ansberry for the amount of the note and costs, then holds that the claim or lien under the chattel mortgage is superior to the rights of any of the defendants."

In discussing the rights of the plaintiff herein as assignee under the decree of Steltzer case, the majority opinion further states:

"It must be kept in mind that in this case not only did the appellant's assignor sue out a specific attachment but he secured a judgment and decree foreclosing the specific attachment and not the chattel mortgage. The rights that Steltzer was claiming

were under the specific attachment and not under the chattel mortgage. * * * The parties saw fit to make no claim under the chattel mortgage but relied entirely upon the lien of the specific attachment. They foreclosed the specific attachment and secured a judgment and decree. By proceeding to foreclose the lien of the specific attachment, they waived all rights that they had under the chattel mortgage lien." I challenge such interpretation of the record.

As stated in the opinion, the Steltzer mortgage was recorded on January 10, 1940. Bordenaro purchased the truck from Fleck Auto Exchange and the Chase Investment Company secured a mortgage lien from Bordenaro, through Fleck, between the dates of March 11 and March 14, 1940. The attachment was ordered on March 20 and levied on March 26, 1940. After the levy of the attachment, Bordenaro and the Chase Investment Company intervened. Thereupon the plaintiff Steltzer filed an amendment to his petition, which petition was entitled, "Petition for Foreclosure of Chattel Mortgage and for Specific Attachment," and added to the allegations thereof the following:

"That since the filing of plaintiff's petition, in the above entitled matter, wherein Elbert Ansberry was the only defendant named, this plaintiff has learned that the defendants Ray Roberts, Joe Bordenaro, and Chase Investment Company claim some right, title, and interest, in and to the 1939 Chevrolet ¾ Ton Pickup truck, as described in plaintiff's petition, either by way of purchase, conditional bill of sale, or mortgage, but states that whatever interest these defendants have or claim to have in and to said truck, that the same is junior and inferior to the right, title, and claim of this plaintiff.

"Plaintiff states that he is still the owner and holder of the note and chattel mortgage and conditional sale contract described in plaintiff's petition, and that the same is past due, by reason of the terms thereof.

"Wherefore, plaintiff prays as in his original petition and further asks that any claim which any of the above named defendants have or claim to have in and to the 1939 Chevrolet ¾ Ton Pickup Truck, described in plaintiff's petition, that said claim or right, title, or interest, be found to be junior and inferior to this plaintiff's chattel mortgage and conditional sale contract."

1248

As pointed out in the majority opinion, the decree that was entered recited that plaintiff was entitled to immediate possession of the motor vehicle attached herein. However, in addition to the provisions of the decree quoted by the majority, the decree also provided as follows:

"It Is Further Ordered, Adjudged and Decreed that the lien and claim of plaintiff's chattel mortgage and conditional sales contract as sued upon in plaintiff's petition, is superior and prior to the claim or interest of all of the defendants named herein, and that any claim or interest which any of said defendants have in and to the motor vehicle being foreclosed upon herein, and described as a 1939 Chevrolet ¾ Ton Pickup Truck, Model No. J. D. Serial No. 21JDO4-6515, Motor No. AT 2468519, is junior and inferior to the right, title, and interest of this plaintiff in and to said motor vehicle."

The portion of the decree last above quoted, considered with the amendment to petition above quoted, clearly demonstrates that the conclusion of the majority that the plaintiff Steltzer "waived all rights that they had under the chattel mortgage lien" is contrary to the record. As above pointed out, the attachment was levied on March 26, 1940. Chase Investment Company secured its mortgage prior thereto about March 14, 1940, and Bordenaro purchased the truck a day or so previous to that. The only possible theory under which the decree could have been entered adjudging Steltzer's interests in the truck superior to those of Bordenaro and the Chase Investment Company was by foreclosure of the chattel mortgage lien. Without the chattel mortgage lien, the attachment lien was subsequent to and inferior to the interests of the Chase Investment Company and Bordenaro. The decree authorized the issuance of special execution to foreclose the plaintiff's liens. These liens were both the lien of the attachment and the lien of the chattel mortgage.

The majority opinion agrees with the decision of the Nebraska court, "that a mortgagee of chattels does not waive or lose his lien by causing an attachment to be levied upon the mortgaged property." First Nat. Bk. v. Johnson, 68 Neb. 641, 644, 94 N. W. 837, 838. This is in accordance with the express holding of this court in the case of Stein v. McAuley, 147 Iowa

630, 125 N. W. 336, 27 L. R. A., N. S., 692, 140 Am. St. Rep. 332, to which the majority opinion refers. The decree herein foreclosed both the chattel mortgage lien and the attachment lien. The plaintiff Mutual Surety Company is the assignee of the decree of foreclosure. Since the chattel mortgage was properly recorded and its lien has never been satisfied or discharged, the right to a special execution herein is determined from the lien of the chattel mortgage. Such lien is superior to the interests of the defendant Bailey. This court is in error when it holds otherwise.

I am disposed to the view that plaintiff, as assignee of the judgment of foreclosure herein, is limited to the right to a special execution to enforce such judgment, which right is not sufficient to sustain an action of replevin such as was brought herein. Accordingly, the trial court may have reached the right result, but the theory under which this court undertakes to affirm the case seems to me to be clearly erroneous.